UNITED STATES of America, Plaintiff,

v.

Joseph E. KLIMEK, Nassau Life Ins. Co., Ltd., Dominion Holding Co., and Colonial Investment Co., Defendants,

Magdalene Klimek, Defendant–Intervenor.

No. 95–5971.

United States District Court, E.D. Pennsylvania.

Jan. 24, 1997.

Charles Flesch, U.S. Department of Justice, Tax Division, Washington, DC, for U.S.

Joseph Klimek, pro se.

Harry C. Barbin, Barbin, Lauffer & O'Connell, Rockledge, PA, for defendant-intervenor.

### MEMORANDUM

DALZELL, District Judge.

This is a case about a tax protester who, despite his two years' incarceration after his conviction for tax evasion in 1987, continues his seventeen-year attempt to evade paying federal income taxes. The case also concerns the protester's wife, who at the eleventh-hour seeks to rescue the marital residence from federal tax lien foreclosure.

As will be seen, in the 1980s the protester built a tangled web in an attempt to shield himself from what is now in excess of a three-quarter million dollar tax obligation. Our resolution of the motions before us will bring this long-delayed day of reckoning much closer.

### I. Factual and Procedural Background [1]

On September 21, 1995, the United States filed this civil action against defendants Joseph E. Klimek ("Klimek"), Nassau Life Insurance Company, Limited ("Nassau"), Dominion Holding Company ("Dominion"), and Colonial Investment Company ("Colonial") to reduce to judgment federal tax assessments against Klimek and foreclose federal tax liens on real property located at 115 Golf Club Drive, Langhorne, Pennsylvania (the "Golf Club Drive property"), which, according to the Government, Klimek equitably owns. According to defendant-intervenor Magdalene M. Klimek ("Mrs. Klimek"), Klimek's wife of over forty years, and as the Government agrees, the Golf Club Drive property is the Klimeks' marital residence.

The Government contends that Nassau, Dominion, and Colonial are fictitious, defunct companies to which Klimek has nominally transferred title to the Golf Club Drive property, as a mechanism by which to shelter the property from his creditors, including the United States. The United States has named these entities as defendants in this suit in order to foreclose any interest they may assert in the Golf Club Drive property.

The Government's tax liens against Klimek's property stem from Klimek's conviction on October 8, 1987 for failing to file federal income tax returns for tax years 1980 through 1983,[2] in violation of 26 U.S.C.

---

1. In the course of this litigation, the Government, pursuant to Fed.R.Civ.P. 36, served Klimek with two sets of requests for admissions, which Klimek returned unsigned and marked "Refused for Fraud." *See* Decl. of Charles M. Flesch at Exhs. C & D. Under Rule 36, unanswered requests for admissions are deemed conclusively to state admitted and undisputed facts for purposes of a motion for summary judgment, unless "the party to whom the request is directed serves ... a written answer or objection addressed to the matter, signed by the party...." *See Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 176 n. 7 (3d Cir.1990) ("This Court and others have held that 'deemed admissions' under Fed.R.Civ.P. 36(a) are sufficient to support orders of summary judgment.") (citing cases). Klimek has proffered no excuse for his failure to respond to the Government's two sets of requests

for admissions. Accordingly, we hold that the matters contained in the Government's requests for admissions are deemed admitted against Klimek. *See* Fed.R.Civ.P. 56(c) ("The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and *admissions on file*, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.") (emphasis added). Our account of the facts in this case is drawn principally from those admissions.

2. This was not Klimek's first brush with the IRS. Indeed, in 1984, the United States Tax Court in *Klimek v. Commissioner of Internal Revenue*, No. 18132–82, 1984 WL 14517 (T.C.1984), ruled that the Klimeks had under-reported their income for tax year 1979.

§ 7203, for which he was sentenced to two consecutive one-year terms of incarceration and five years of probation. *See United States v. Klimek,* Cr. No. 87–00165 (E.D.Pa. 1987).[3]

As a condition of his probation, Judge Bechtle of this Court ordered Klimek to fulfill any and all of his outstanding tax liabilities for the period of the criminal indictment, 1980 through 1986. Accordingly, in December of 1987, Klimek, through his attorney, filed with the Internal Revenue Service ("IRS") signed income tax returns on Federal Form 1040 for tax years 1980 through 1986.[4]

Not surprisingly, the IRS audited Klimek's tax returns for these years, and the delegate of the Secretary of the United States Treasury determined that Klimek owed additional taxes, which Klimek has, as of yet, failed to pay. As of November 30, 1996, Klimek, the Government claims, owes the United States, in income tax deficiencies, penalties, and interest, seven hundred fifty-nine thousand four hundred twenty-seven dollars and twenty-one cents. *See* Decl. of Dennis L. Bohn, IRS Revenue Officer, at ¶ 8.

Not only has Klimek failed to pay his federal income taxes for the past seventeen years, but, ever since the IRS notified Klimek on August 4, 1984 of its criminal investigation (which ultimately concluded with Klimek's conviction by a jury before Judge Bechtle in October of 1987), Klimek has actively worked to evade paying taxes by concealing his assets.

Specifically, on August 23, 1984, Klimek and his wife for no consideration transferred to "Dominion Holding Co., Del. East P.M.B. 11 Grand Turk, Turks and Caicos Island, B.W.I.," title to real property located at 4336 Central Avenue, Ocean City, New Jersey (the "Ocean City property"), which the Kli-

meks had purchased in December of 1981 for $190,000. *See* Gov't's First Req. for Admissions at Exh. 19 (deed for Ocean City property); Magdalene Klimek Dep. at 53. The Klimeks ultimately sold the Ocean City property for $300,000 in September of 1988, but did not pay taxes on the gain realized on the sale. *See id.* at ¶¶ 92–97, 107–08 & Exh. 20 (deed of sale); Magdalene Klimek Dep. at 55.

On August 23, 1984, the Klimeks also transferred title to their then-residence at 35 Woodstock Drive, Newtown, Pennsylvania ("Newtown property") to Nassau as trustee for Dominion. *See* Decl. of Magdalene Klimek at Exh. B. The Klimeks had purchased the Newtown property in 1969 in their own names. *See* Gov't's First Req. for Admissions at Exh. A–1. The Klimeks sold the Newtown property in July of 1985 and, a month later, invested the proceeds in the Golf Club Drive property. *See id.* at Exh. C–1; Magdalene Klimek Dep. at 33.

On August 30, 1985, the Klimeks, in the names of Nassau and Dominion, purchased the Golf Club Drive property—their current marital residence. *See* Magdalene Klimek Dep. at 33; Gov't's First Req. for Admissions at Exh. 26 (deed). On March 27, 1986, as a further means of shielding the Golf Club Drive property from the IRS, Klimek had Dominion grant a mortgage on the Golf Club Drive property to Colonial, *see id.* at ¶ 126; Magdalene Klimek Decl. at Exh. D–6. The Government claims this is a sham mortgage since Klimek neither owed Colonial any money, *see* Gov't's First Req. for Admissions at ¶ 127, nor ever made any mortgage payments thereafter, *see* Magdalene Klimek Dep. at 48–49. Since 1990, the Government has filed and recorded notices of the federal tax liens in the Bucks County Prothonotary's Office (the Golf Club Drive property is located in

---

3. Mrs. Klimek has since 1980 filed separate federal income tax returns. *See* Magdalene Klimek Decl. at 15.

4. According to Klimek's calculation, he owed the Government in income taxes as follows:

| Tax Year | Tax Klimek Reported He Owed |
|---|---|
| 1980 | $ 27,054.01 |
| 1981 | $ 20,516.51 |
| 1982 | $ 18,139.37 |
| 1983 | $ 20,800.87 |
| 1984 | $ 26,357.27 |
| 1985 | $ 35,241.22 |
| 1986 | $ 35,238.97 |
| Total Tax Owed: | $183,348.32 |

Bucks County, Pennsylvania) against Klimek and against the corporate defendants named here.[5]

Nassau, Dominion, and Colonial, which are not domestic or foreign corporations doing business in the Commonwealth of Pennsylvania, are, the Government maintains, fictitious, defunct entities, which Klimek controls as their president and/or "president/agent," see Gov't's First Req. for Admissions at ¶¶ 128–31, and on behalf of which he has signed many legal documents, see id. at ¶ 128. Mrs. Klimek is the Secretary Agent of Colonial and an officer of Dominion. See Magdalene Klimek Dep. at 24 & 33.

On October 19, 1995, less than a month after the Government initiated this civil case, Klimek filed a voluntary petition for relief under Chapter Thirteen of the United States Bankruptcy Code. By virtue of Klimek's bankruptcy filing, this civil action was stayed as a matter of law, see 11 U.S.C. § 362(a), pending the resolution of the bankruptcy proceeding. See November 9, 1995 Order (ordering Clerk to place case in the Civil Suspense File). On December 28, 1995, Judge Fox of the Bankruptcy Court granted Klimek's praecipe for voluntary dismissal, pursuant to 11 U.S.C. § 1307(b), of the bankruptcy proceeding Klimek had, less than two months earlier, begun. The voluntary dismissal of the bankruptcy case was without prejudice and did not discharge Klimek's debts to the Government. See 11 U.S.C. § 349(a).

Consequently, on January 26, 1996, we ordered that this matter be transferred once again to our active docket. See January 26,

1996 Order; Docket Entry No. 5 (Klimek's objections). In response, Klimek filed a document entitled, "Refusal for Cause Without Prejudice UCC 3–501," where he asserted that "I, Joseph Edmond, Klimek, herein-after Aggrieved Party, have timely noticed STEWART DALZELL, JUDGE OF THE DISTRICT COURT OF EASTERN PENNSYLVANIA of my Refusal and return to sender Without Dishonor that said Case has been Discharged and is RES JUDICATA!" Docket Entry No. 7.[6]

The Government on February 17, 1996, personally served process upon Klimek, in his individual capacity, and on behalf of each of the other named defendants.[7] Klimek, however, returned the summons and complaint to the Government, stamped "Refusal For Cause Without Dishonor UCC 3–501." See Docket Entry No. 12.

On March 1, 1996, Robert Samuel Chappell, who, at the time was (and, presumably, remains) incarcerated in the New Mexico State Penitentiary in Sante Fe, New Mexico,[8] represented himself to be defendant Nassau's "founder and president," and moved for summary judgment on behalf of Nassau and the other defendants in this case. See Docket Entry No. 10. We held that the motion was a nullity because Chappell is not a licensed attorney and thus could not represent Nassau or any of the other corporate defendants here. See April 1, 1996 Order at ¶¶ b & c (citing *Rowland v. California Men's Colony*, 506 U.S. 194, 201–03, 113 S.Ct. 716,

---

**5.** Additionally, the Klimeks, after being informed of the IRS's criminal investigation, went on a shopping spree, according to the Government. The Government calculated that the Klimeks spent exactly three hundred ninety-seven thousand three hundred ninety-five dollars and seventy cents on such items as a fur coat, a car, a diamond ring, South African Kruggerands, and real property. See Gov't's First Req. for Admissions at ¶ 68(j).

**6.** Our quotations of Klimek's "motion papers" throughout this Memorandum are true to his idiosyncratic typographical style and unburdened with the many *sic* s that perfect quotation form would normally require.

**7.** Klimek, according to the Government, was served with process on behalf of Dominion because he was listed as its "President Agent" on a

mortgage Dominion had allegedly given Colonial on the Golf Club Drive property. See Am.Compl. at Exh. K; Gov't Summ.J.Br. at 2. Klimek was also served on behalf of Colonial and Nassau "because those entities are defunct and have no agent within the Commonwealth of Pennsylvania for purposes of service of process" and Klimek is in possession of the Golf Club Drive property in which these entities may claim an interest. See Gov't Summ.J.Br. at 2 n. 2. In addition, Klimek has represented himself to be Nassau and Colonial's President. See Gov't's First Req. for Admissions at ¶¶ 128–31.

**8.** See Gov't Br. in Opp. to Summ.J.Mot. at 6 n. 9 (docket entry no. 13).

721, 121 L.Ed.2d 656 (1993) & 28 U.S.C. § 1655).[9]

The Government, pursuant to Fed.R.Civ.P. 15(a), amended the complaint in this case on April 1, 1996. *See* Docket Entry No. 16. Count I of the amended complaint seeks a judgment in favor of the United States in the amount of Klimek's currently unpaid federal tax assessments which, as of November 30, 1996, totalled seven hundred fifty-nine thousand four hundred twenty-seven dollars and twenty-one cents. *See* Bohn Decl. at ¶ 8. Count II seeks a declaratory judgment that (a) the federal tax liens are valid and subsisting those tax liens upon Klimek's property or right to any property, (b) Nassau and Dominion are nominees of Klimek with respect to the Golf Club Drive property, and (c) Colonial's mortgage on the Golf Club Drive property is a sham. In addition, Count II seeks a Court Order that (a) the federal tax liens be foreclosed upon all of Klimek's property and rights to property, including the Golf Club Drive property, and (b) the Golf Drive Club Drive property be sold and the proceeds from that sale be distributed to cover the administrative costs of the sale, with the balance remitted to the United States.

Thereafter, Klimek returned the Government's amended complaint, attaching to it a document styled, "Refusal for Cause Without Dishonor," which, in relevant part, asserted that:

> This Refusal For Cause is made timely as all Liabilities whether Real or Fictions were Discharged in the Bankruptcy Court of the Eastern District of Pennsylvania on December 22, 1995 by Judge BRUCE I. FOX. (see 95–18275).

> Therefore, the complaint of September 21, 1995 (Civil No. 95–5971) is RES JUDICATA!

> The double jeopardy provision of the Fifth Amendment to the Constitution for the United States of America bars a civil proceeding after criminal penalties were enacted by the sovereign. (see Travis v. Brownlee, et al v. United States, CR 84–52 Wks, U.S. District Court of Delaware and

> JOSEPH E. KLIMEK v. United States, Crim. Case # 8700165, U.S. District Court of Eastern Pennsylvania.)

> The above cases establish double jeopardy.

> Therefore the complaint of September 21, 1995 (civil No. 95–5971) is RES JUDICATA!

> According to Title 44 sections 1505, 1510 and the Parallel Table of Authorities for rule making in C.F.R. 26 and 27 of the Internal Revenue Code Section 6331 (and a host of others) does not have the force and effect of law (see exhibit # 1 and 2). Note that Title 27 has the force and effect of law in 26 U.S.C. 6321. Title 26 shows T.D. 7577 which has no force and effect of law. This is the Treasury Departments Procedure for the states.

> Therefore the complaint of September 21, 1995 (civil No. 95–5971) is RES JUDICATA!

> The Federal Court in ?Delaware found the entities of Nassau Life Insurance Company Limited to be legal, NOT A SHAM and Mr. Robert Samuel Chappell to be its President. (see Brownlee case above).

> Therefore the complaint of September 21, 1995 (civil no. 95–5971) is RES JUDICATA!

> My name is Joseph Edmond, Klimek, and therefore your service of court papers and/or complaint are in error. The address for Nassau Life Insurance Company Limited, Dominion Holding Company and Colonial Investment Company is not 115 Golf Club Drive, Langhorne, Pennsylvania (19047). This fact is recorded from Federal Court Transcripts.

> With all of the above points but not limited to those few I have enclosed and ORDER OF DISCHARGE OF COMPLAINT (civil no. 95–5971) in favor of the Accused. I would assume you do not wish to be a party to this CONSTRUCTIVE FRAUD.

> In Commerce, TRUTH IS SOVEREIGN.

---

9. We subsequently denied Chappell's "motions" (1) to alter or amend our Order of April 1, 1996 (docket entry no. 18), and (2) to file a brief *"amicus curiae, pro bono publico"* (docket entry no. 19). *See* Order of May 7, 1996 (docket entry no. 27).

/s/ ————————————————
        Joseph Edmond, Klimek, sui juris

        c/o 115 Golf Club Drive

        Langhorne, Pennsylvania Republic

        Non-domestic State

        Federal Regional Venue Denied

*See* Docket Entry No. 20.

On May 7, 1996,[10] we ordered, *inter alia,* that (1) defendants Nassau, Dominion, and Colonial to appear, plead, answer, or otherwise move, through a licensed attorney, in this matter, or, we warned them, "they will be in default" and "this Court will proceed to a hearing and adjudication of the merits of this suit," *see* May 7, 1996 Order at ¶ 3, and (2) the Government effect personal serve of that Order, together with the amended complaint, on Klimek and Chappell, who held himself out to be an officer or other representative of defendants Nassau, Dominion, and Colonial, *see id.* at ¶¶ 4 & 5 (docket entry no. 28). In accordance with our Order, the Government personally served Klimek and

---

**10.** On *that same day,* we denied Klimek's "Motion to Strike United States Motion to Reactivate Case," which Klimek had filed in April, close to four months after we had already placed this case once again on our active docket. *See* May 7, 1996 Order (docket entry no. 26).

**11.** On June 17, 1996, Klimek filed papers styled, "Refusal for Cause Without Dishonor of Charles M. Flesch's Amended Complaint and Judge Dalzell's Order of May 7, 1996," *see* Docket Entry No. 31, and, rather than paraphrase Klimek's papers, we quote from them in relevant part:
    *MISTAKEN IDENTITY*
  1. Your instruments being refused lists "JOSEPH E. KLIMEK" to which the Aggrieved Party does not claim any nexus, and is a *stranger to said Aggrieved Party.*
  2. The Affiant only accepts instruments with a mailing location specifically not within the jurisdiction of the U.S. or any defacto State: The Aggrieved Party only receives mail with the proper name and location as shown: Joseph Edmond, sui juris, General Delivery, Langhorne Post Office, Langhorne Pennsylvania.
  3. The Complaint and the Amended Complaint are both a case of Mistaken Identity, as no one by the name of "JOSEPH E. KLIMEK" lives at the address on said complaint.
  4. A person by the name of JOSEPH E. KLIMEK, timely filed for Bankruptcy in Case No. 95–18275, and all Liabilities were discharged on [Klimek did not finish this "point"].

---

Chappell on May 31 and June 19, 1996, respectively.

In response, Klimek filed a document entitled, "Refusal for Cause Judge Dalzell's May 7, 1996 Order," which, among other things, stated that "I am putting you on Notice JUDGE DALZELL that a crime has/is taking place, and I am Notifying you of this crime and I am demanding that you take action against these Extortionists as they have prosecuted me criminally, and now they are prosecuting me civilly in case No. 95–5971, which is double jeopardy, among other violations." *See* Docket Entry No. 30.[11]

On August 12, 1996, we ordered the Clerk of the Court to enter default against the defendants Nassau, Dominion, and Colonial for their failure to comply with our Order of May 7, 1996. *See* Docket Entry No. 38; *see also* Docket Entry Nos. 35–37 (Gov't's Requests for Default Judgment). Two days later, Klimek filed another "Notice of Refusal For Fraud Under [F.R.Civ.P. 9(b)]." *See* Docket Entry No. 39.[12]

---

  5. Therefore both the complaint of September 21, 1995 (civil No. 95–5971) and this Amended Complaint dated 5/14/96 is RES JUDICATA!
  On July 23, 1996, Klimek filed another "Refusal For Cause Without Dishonor," which reiterated the "points" made in his previous filing and added the following conclusion:
    WHEREFORE, U.S. ATTORNEY CHARLES M. FLESCH, not only has a case of Mistaken Identity in his Complaint, but he has failed to register as an Agent to collect a debt for a Foreign Government, nor did he produce his Delegation of Authority to investigate JOSEPH E. KLIMEK and is in violation of Law.
    This "Refusal For Cause" is respectfully submitted again this 18th day of July, 1996. The court made its Order on a complaint based on Constructive fraud by the IRS. As no replies have ever been received to my numerous Refusals for Cause, I am considering this complaint harassment for which charges will be sought at your legal peril.
Docket Entry No. 33.

**12.** On August 20, 1996, Klimek again filed a "Notice of Refusal for Fraud," which, *inter alia,* declared that "Judge Dalzell's ORDER is Refused for Fraud, as Plaintiff did not join Defendant in this action under the American Free Flag of peace Title 4 U.S.C. 1, and judge's Order is without merit and a fraud." *See* Docket Entry No. 42.

On September 27, 1996, the Government served Klimek with a request for documents, and noticed his deposition for October 17, 1996. *See* Gov't Summ.J.Br. at 4. Klimek, writing across the discovery requests "Refused for Fraud," returned them to the Government, and never produced the requested documents or appeared for the scheduled deposition. *See id.* at 22. The Government, however, was able to depose Klimek's wife, Magdalene M. Klimek. *See id.* at 5. The Government then served Klimek with two sets of requests for admissions, both of which were returned by Klimek with the phrase "Refused For Fraud" written across them. *See* Decl. of Charles M. Flesch, Dept. of Justice, Tax Division, at Exhs. C & D; *see supra* n. 1.[13]

On November 1, 1996—close to ten months after we had reopened this case—Mrs. Klimek moved, pursuant to Fed.R.Civ.P. 24(a)(2), for leave to intervene in this matter, contending that because the Golf Club Drive property is the marital residence, she has an equitable interest in the property and that the disposition of this action will impair that equitable interest. Despite the fact that Mrs. Klimek's motion was untimely under Rule 24 (Mrs. Klimek had allowed a year to elapse from the filing of the original complaint), we granted her leave to intervene, and allowed her to conduct discovery. *See* November 21, 1996 Order (docket entry no. 52).

Now before us are the Government's (1) motion for summary judgment and sanctions against Klimek; (2) motion for entry of default judgment against defendants Nassau, Dominion, and Colonial; and (3) opposition to Mrs. Klimek's cross-motion for summary judgment. Klimek, as has been his custom in this case, has filed two "notices," which while acknowledging receipt of the Government's motions, declare that they are "refused for fraud." *See* "Notice" of December 3, 1996 and January 15, 1997. From Mrs. Klimek, we have before us (1) an answer to the amended complaint; (2) a motion for summary judgment; and (3) a reply to the Government's opposition to her cross-motion for summary judgment.[14]

---

**13.** On September 11, October 3 and October 8, 1996, Klimek filed three "Notice[s] of Refusal for Fraud," the "notice" provision of which reads as follows:

> This is a notice under the jurisdiction of the American Flag of Peace [Title 4, U.S.C. 1] of the United States of America. No jurisdiction of Admiralty, Maritime, or Marshall Rule will be allowed in the jurisdiction of this case.
>
> Failure on your part to vacate the presentment of your demand will result in my filing a title 42 action as Charles M. Flesch has knowledge of the law and has neglected to stop and correct the wrong as per U.S.C.1986, and conspiracy of civil rights U.S.C.1985, among other violations.
>
> \*   \*   \*   \*   \*   \*
>
> This Christian claims all her Constitutional guarantees at all times and waves none at any time.

*See* Docket Entry Nos. 44–46; *see* Docket Entry No. 49 (collecting Klimek's "motion papers" in response to the Government's discovery requests).

**14.** Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In making this determination, we must draw all reasonable inferences in favor of the non-movant. *Meyer v. Rie-*

*gel Products Corp.*, 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. dismissed*, 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Summary judgment must be granted if no reasonable trier of fact could find for the non-moving party. *Id.*

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing'—that is, pointing to the district court—that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). If the moving party has carried its burden of establishing the absence of a genuine issue of material fact, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). When the non-moving party's evidence in opposition to a properly-supported motion for summary judgment is merely "colorable" or "not significantly probative," we may grant summary judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11. Hence, a party opposing summary judgment "must set forth specific facts showing a genuine issue for trial and may not rest upon mere allega-

## II. *Discussion*

### A. *Count I of the Amended Complaint*

#### 1. *Klimek's Tax Liability*

##### a. *Assessment of Klimek's Tax Deficiency*

In Count I of the amended complaint, the Government seeks to reduce to judgment many income tax, penalty, and interest assessments the IRS has made against Klimek, which, as of November 30, 1996, total seven hundred fifty-nine thousand four hundred twenty-seven dollars and twenty-one cents. *See* Bohn Decl. at ¶ 8.[15]

■ A federal tax deficiency assessment is the "ascertainment of the amount due [in delinquent taxes] and the formal entry of that amount on the books of the Secretary." *United States v. Dixieline Fin., Inc.,* 594 F.2d 1311, 1312 (9th Cir.1979). In the case of a tax deficiency, "[i]f the taxpayer does not file a petition with the Tax Court within . . . [ninety days from the date of the issuance of the Notice of Deficiency], the deficiency . . . shall be assessed, and shall be paid upon notice and demand from the Secretary." 26 U.S.C. § 6213(c). Once an assessment has been made, the Government is entitled to pursue certain remedies, similar to those of a judgment creditor, in seeking satisfaction of the tax deficiency owed. *See Bull v. United States,* 295 U.S. 247, 260, 55 S.Ct. 695, 699, 79 L.Ed. 1421 (1935) (holding that "[t]he assessment is given the force of a judgment, and if the amount assessed is not paid when due, administrative officials may seize the debtor's property to satisfy the debt").

■ In this case, as a condition of the judgment on his conviction, Klimek was ordered to fulfill all his outstanding tax liabilities, and, as a result, in December of 1987, Klimek filed tax returns, which the IRS then audited, for tax years 1980 through 1986. *See* Gov't's First Req. for Admissions at Exhs. 4–13 (income tax returns filed by Klimek for tax years 1980 through 1986). On November 20, 1990, the IRS, pursuant to 26 U.S.C. § 6213(a), sent Klimek a "Notice of

tions, general denials, or vague statements." *Quiroga v. Hasbro, Inc.* 934 F.2d 497, 500 (3d Cir.), *cert. denied,* 502 U.S. 940, 112 S.Ct. 376, 116 L.Ed.2d 327 (1991). Whether a fact is material is determined by substantive law. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

15.

| Tax Year | Type of Tax | Dates of Assessments | Balance Due on Assessed Tax* |
|---|---|---|---|
| 1980 | 1040 | 4/4/88 & 4/23/91 | $ 23,290.02 |
| 1981 | 1040 | 4/4/88 & 4/23/91 | $ 39,774.37 |
| 1982 | 1040 | 4/4/88 &4/23/91 | $106,546.78 |
| 1983 | 1040 | 4/4/88 & 4/23/91 | $107,486.55 |
| 1984 | 1040 | 4/4/88 & 4/23/91 | $113,263.09 |
| 1985 | 1040 | 4/4/88 & 4/23/91 | $144,208.67 |
| 1986 | 1040 | 4/4/88 & 4/23/91 | $128,917.17 |
| 1987 | 1040 | 5/23/88, 1/9/89 & 8/29/91 | $ 5,996.95 |
| 1988 | 1040 | 3/16/92 | $ 87,349.49 |
| 1990 | 1040 | 4/27/92 & 12/21/92 | $ 394.75 |
| 1990 | Miscellaneous Penalty | 11/25/91 | $ 773.55 |
| 1991 | 1040 | 8/31/93 | $ 452.21 |
| 1992 | 1040 | 8/23/93 | $ 1,003.61 |
| | | Total Deficiencies: | $759,427.21 |

* Balance due as of November 30, 1996, *see* Bohn Decl. at ¶ 4 & attached exhibits.
Note: Klimek did not file income tax returns for tax year 1989, and, from our reading of the record, the Government has not assessed any tax deficiency for that tax year.

**1110**

Deficiency" covering tax years 1980 through 1986. *See id.* at Exh. 14. After Klimek failed to pay the deficiencies or petition the Tax Court for a redetermination of the deficiencies assessed, *see id.* at ¶ 37, the IRS updated its calculation of Klimek's tax deficiencies for tax years 1980 through 1986 and sent him a second set of notices of deficiencies to reflect his recalculated, outstanding tax liabilities. *See id.* at ¶¶ 40 (tax year 1980), 45 (1981), 50 (1982), 54 (1983), 58 (1984), 62 (1985) & 67 (1986). Again, Klimek neither paid the tax deficiencies nor petitioned the Tax Court for redress.

The IRS also audited Klimek's income tax returns for tax years 1987, 1988,[16] 1990, 1991 and 1992, and sent Klimek notices of deficiency for those tax years. *See id.* at ¶¶ 77, 79 & Exh. 16 (tax year 1987); ¶¶ 88, 90 & Exh. 18 (tax year 1988); ¶¶ 99 & 106 (tax year 1990); ¶ 101 (tax year 1991); ¶ 103 (tax year 1992). Klimek neither paid the noticed deficiencies nor sought to avail himself of his right to appeal to the Tax Court.

█ When the statutory period within which to contest the notices of deficiency had expired, *see* 26 U.S.C. § 6213(a), the Government, pursuant to 26 U.S.C. §§ 6201 & 6213(c), assessed the amount of tax deficiency, as reflected in the Commissioner's issuance of Certificates of Assessments and Payments for tax year 1980 through 1988 and 1990 through 1992 to Klimek on August 17 and 18, 1994. *See* Bohn Decl. at Exhs. 1–A— 1–C (copies of Form 4340, Certificate of Assessments and Payments). Certificates of

Assessments and Payments are "routinely used to prove that tax assessment has in fact been made," *Geiselman v. United States*, 961 F.2d 1, 6 (1st Cir.), *cert. denied*, 506 U.S. 891, 113 S.Ct. 261, 121 L.Ed.2d 191 (1992), and are "presumptive proof of a valid assessment," *id.; United States v. Jones*, 877 F.Supp. 907, 912–13 (D.N.J.1995) (Certificates of Assessments and Payments granted a "presumption of correctness"); *In re Garm*, 114 B.R. 414, 416 (Bankr.M.D.Pa. 1990) (certificates qualify as self-authenticating for purposes of Fed.R.Evid. 902).

█ The record clearly shows that the assessments of deficiencies with respect to Klimek's income tax returns for tax years 1980–1988 and 1990–1992 were made in accordance with all statutory and regulatory requirements. *See* 26 C.F.R. § 301.6203–1; 26 U.S.C. § 6203.[17]

#### b. *Klimek's Federal Income Tax Assessment*

█ Our Court of Appeals has instructed that, with the exception of civil fraud penalty assessments, federal income tax assessments, including civil penalties (*i.e.,* for negligence) and interest, "are generally presumed valid and establish a prima facie case of liability against a taxpayer." *Freck v. Internal Revenue Serv.*, 37 F.3d 986, 992 n. 8 (3d Cir.1994); *see also Becker v. Internal Revenue Serv.*, 804 F.Supp. 658, 668 (D.N.J. 1992) (IRS's determination of civil penalty presumptively correct). The burden is on the taxpayer to overcome this presumption by persuading the finder of fact, by a prepon-

---

16. As noted earlier, in 1988, Klimek failed to pay taxes on the gain realized in the sale of the Ocean City property, which the Klimeks purchased for $190,000 in 1981, transferred for no consideration to Dominion in 1984, and sold for $300,000 in 1988. *See id.* at ¶¶ 92–97, 107–108; Magdalene Klimek Dep. at 55.

17. A Certificate of Assessments and Payments is entitled to a presumption of correctness. *United States v. Mazzara*, 530 F.Supp. 1380, 1382 (D.N.J.1982) (affidavit by I.R.S. officer detailing defendant's tax liability is entitled to a presumption of correctness), *aff'd*, 722 F.2d 736 (3d Cir. 1983); *Long v. United States*, 972 F.2d 1174, 1181 (10th Cir.1992) ("For purposes of granting summary judgment, a Certificate of Assessments and Payments is sufficient evidence that an as-

sessment was made in the manner prescribed by § 6203 and Treas. Reg. 301.6203–1"); *Hughes v. United States*, 953 F.2d 531, 535 (9th Cir.1992) (Certificate of Assessments and Payments can serve as proof that assessments were actually made); *McCarty v. United States*, 929 F.2d 1085, 1089 (5th Cir.1991) (Certificate of Assessments and Payments is admissible evidence for purposes of summary judgment); *United States v. Chila*, 871 F.2d 1015, 1018 (11th Cir.) (Certificate of Assessments and Payments submitted by the government is accepted as presumptive proof of a valid assessment), *cert. denied*, 493 U.S. 975, 110 S.Ct. 498, 107 L.Ed.2d 501 (1989); *United States v. Nuttall*, 713 F.Supp. 132, 135 (D.Del.) (assessments listed in Form 4340 are given presumptive effect), *aff'd*, 893 F.2d 1332 (3d Cir. 1989).

derance of the evidence, that the income tax assessments are erroneous. *See Sullivan v. United States,* 618 F.2d 1001, 1008 (3d Cir. 1980).

■ Klimek has failed to offer *any* evidence that the tax assessments are incorrect in the amount the Government claims. He has never challenged in the Tax Court the Notices of Deficiency or the Certificates of Assessments and Payments for tax years 1980 through 1988 and 1990 through 1992. Nor has Klimek ever rebutted or even responded to the Government's requests for admissions regarding tax years 1980 through 1988 and 1990 through 1992, except to return them with the words "Refused for Fraud" scrawled across them. *See Lane v. United States,* 328 F.2d 602, 603 (5th Cir.1964) (holding that if no countervailing evidence is introduced, "the trial court [is] ... justified, in fact required, to enter summary judgment for the Government the amount of the taxes proved to be due.").

■ Given the fact that Klimek bears the burden of overcoming the presumption that the IRS's tax assessment is correct, and in view of his failure to offer any evidence contracting the correctness of the tax assessment against him, we conclude that there is no genuine issue of fact regarding the sum due in federal income taxes to the United States. Thus, we shall grant the Government's motion for summary judgment as to the amount of federal tax assessment, including civil penalties, owing to the United States.

#### c. *Civil Fraud Penalties*

The Government also has assessed, pursuant to 26 U.S.C. § 6653(b),[18] civil fraud penalties against Klimek for tax years 1980 through 1986 because, in the Government's

view, Klimek has over the course of seventeen years intentionally sought to evade paying federal taxes. *See* Gov't's First Req. for Admissions ¶¶ 39, 44, 49, 53, 57, 58 & 66 (detailing amount of civil fraud penalty sought for each tax year).[19]

■ Unlike the case of federal income tax assessments, the Government bears the burden of production and the ultimate burden of proof when it seeks to impose civil fraud penalties upon a taxpayer. Fraud "means intentional wrongdoing on the part of a taxpayer motivated by a specific purpose to evade a tax known or believed to be owing." *Robinson v. United States,* No. 69–1456, 1973 WL 510, at *1 (W.D.Pa. Feb. 7, 1973). Though our Court of Appeals has instructed that the Government must show fraud "by clear and convincing evidence," *Anastasato v. Commissioner,* 794 F.2d 884, 889 (3d Cir. 1986), fraudulent intent may be inferred from various kinds of circumstantial evidence, *see Edelson v. Commissioner,* 829 F.2d 828, 833 (9th Cir.1987). Such circumstantial evidence may include "(1) consistent and substantial understatement of income, (2) failure to maintain adequate records, (3) failure to cooperate with an IRS investigation, (4) inconsistent or implausible explanations of behavior and (5) awareness of the obligation to file returns, report income and pay taxes." *Schiff v. United States,* 919 F.2d 830, 833 (2d Cir.1990), *cert. denied,* 501 U.S. 1238, 111 S.Ct. 2871, 115 L.Ed.2d 1037 (1991). In addition, courts have inferred fraud where there is evidence that the taxpayer has failed to file tax returns and has concealed assets. *See Bradford v. Commissioner,* 796 F.2d 303, 307 (9th Cir.1986).

■ In support of its assessment of civil fraud penalties, the Government points to several badges of fraud. On January 30,

---

**18.** 26 U.S.C. § 6653(b)(1) (1986) states, in relevant part, that "[i]f any part of any underpayment ... of tax ... is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment."

**19.**

| Tax Year | Civil Fraud Penalty Assessed |
|---|---|
| 1980 | $ 13,660.00 |
| 1981 | $ 15,781.00 |
| 1982 | $ 21,625.76 |
| 1983 | $ 21,993.40 |
| 1984 | $ 12,966.51 |
| 1985 | $ 14,902.37 |
| 1986 | $ 11,228.33 |

Total Civil Fraud Penalty Assessment: $112,157.37

1981, Klimek submitted to his employer a Federal Form W–4, in which Klimek claimed that he was exempt from paying federal income taxes. *See* Gov't's First Req. for Admissions at ¶ 68(a). Accordingly, no federal income taxes were withheld from Klimek's income for tax years 1982 and 1983. *See id.* at ¶ 68(b). Klimek also attempted to have no federal income tax withheld for tax year 1981. *See id.* at ¶ 68(c). Klimek directed his employer's comptroller not to withhold Pennsylvania income tax from his pay. *See id.* at ¶ 68(e).

In addition, after learning in 1984 of the IRS's criminal investigation against him, Klimek transferred title to two properties he and his wife owned to Dominion, purchased the Golf Club Drive property in the name of Dominion and Nassau (two tax shelters), and filed a sham mortgage in favor of Colonial, in an obvious effort to shield these properties from his creditors, including the United States. *See id.* at ¶¶ 68(h) & (i). Moreover, rather than paying his taxes between 1980 and 1986, Klimek spent three hundred ninety-seven thousand three hundred ninety-five dollars and seventy cents on such items as a vacation trip, a tennis club membership, a fur coat, a diamond ring, South African Kruggerands, and real property. *See id.* at ¶ 14.

Furthermore, although Klimek knew how to file income tax returns—he had, until 1980, duly filed income tax returns for the previous thirty years—he did not file income tax returns for taxable years 1980 through 1986 until 1987, when such filings were made a condition of his sentence, following his conviction that year of failing to file federal income tax returns for taxable years 1980 through 1983. *See id.* ¶ 68(g).

Finally, Klimek, a graduate of the University of Pennsylvania, with a degree in engineering, was a successful businessman who was instrumental in the late 1970s and early 80s in improving the financial position of his employer. Gov't Summ.J.Br. at 31 (citing transcript of 1987 criminal trial). The Government argues that Klimek's educational and work experience, his practice until 1980 of filing income tax returns, and his filing in 1987 of his tax returns for tax years 1980 through 1986, demonstrate that Klimek was well aware of his obligation to file returns and pay taxes.

The totality of Klimek's over decade-long history with the IRS permits no other reading than that Klimek's actions constitute a fraudulent attempt to evade taxes for the years 1980 through 1986, thereby justifying the IRS's imposition of civil fraud penalties for those years. In view of this clear and convincing proof that the record provides, we shall grant summary judgment in favor of the Government for the civil fraud penalties it has assessed against Klimek.

### B. *Count II of the Amended Complaint*

■ Internal Revenue Code § 6321 provides that "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States, upon all property and rights to property, whether real or personal, belonging" to a delinquent taxpayer. Such a lien arises automatically when the outstanding taxes are assessed, and it continues until the tax deficiency is satisfied or becomes unenforceable under the applicable statute of limitations. *See United States v. McDermott,* 507 U.S. 447, 447–49, 113 S.Ct. 1526, 1527, 123 L.Ed.2d 128 (1993); *United States v. National Bank of Commerce,* 472 U.S. 713, 719, 105 S.Ct. 2919, 2923–24, 86 L.Ed.2d 565 (1985); *Philadelphia & Reading Corp. v. United States,* 944 F.2d 1063, 1064 n. 1 (3d Cir.1991).

■ A § 6321 lien attaches to "every interest in property that a taxpayer might have," *National Bank of Commerce,* 472 U.S. at 719, 105 S.Ct. at 2923–24, including an equitable interest in property. *See In re Atlantic Business and Community Dev. Corp.,* 994 F.2d 1069, 1071 (3d Cir.1993) ("These liens reach property in the violator's possession at the time of the lien as well as after-acquired property."). Indeed, the Supreme Court has noted that "[s]tronger language could hardly have been selected to reveal a purpose to assure the collection of taxes." *Glass City Bank v. United States,* 326 U.S. 265, 267, 66 S.Ct. 108, 110, 90 L.Ed. 56 (1945) (interpreting predecessor section of

§ 6321). Finally, "[a] lien arising under § 6321 is afforded priority over all other unperfected liens or claims asserted against the taxpayer's property." *21 West Lancaster Corp. v. Main Line Restaurant, Inc.*, 790 F.2d 354, 356 (3d Cir.1986).

In Klimek's case, the IRS has chosen to enforce the collection of the unpaid income taxes here by instituting a lien-foreclosure suit, pursuant to § 7403(a) of the Internal Revenue Code, which authorizes the institution of a civil action in federal court to enforce a lien "to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability."

■ The Government has named Nassau, Dominion, and Colonial as defendants, and we have allowed Mrs. Klimek to intervene, because section 7403(b) provides that "[a]ll persons having liens upon or claiming any interest in the property involved in such action shall be made parties thereto" and because, under § 7403(c), such a lien-foreclosure suit is a plenary action in which the court "shall ... adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property." *See generally United States v. Rodgers*, 461 U.S. 677, 680–82, 103 S.Ct. 2132, 2136, 76 L.Ed.2d 236 (1983).

1. *Nominee/Alter Ego Claims*

■ The Government contends that Klimek is the equitable owner of the Golf Club Drive property and that Nassau, Dominion, and Colonial merely hold title to the property as Klimek's nominees and/or alter egos for his use and benefit. Consequently, the IRS has since 1990 filed and recorded notices of the Government's tax liens against Klimek, and against Nassau and Dominion as Klimek's nominees, in the Office of the Prothonotary of Bucks County. *See* Am. Compl. at Exhs. A–I.

Courts have deemed a number of factors relevant in determining whether a corporate entity is merely the nominee of an individual, among them:

(a) No consideration or inadequate consideration paid by the nominee;

(b) Property placed in the name of the nominee in anticipation of a suit or occurrence of liabilities while the transferor continues to exercise control over the property;

(c) Close relationship between transferor and the nominee;

(d) Failure to record conveyance;

(e) Retention of possession by the transferor; and

(f) Continued enjoyment by the transferor of benefits of the transferred property.

*Towe Antique Ford Found. v. I.R.S.*, 791 F.Supp. 1450, 1454 (D.Mont.1992) (citing cases), *aff'd*, 999 F.2d 1387 (9th Cir.1993); *see Simpson v. United States*, Nos. 87–526–Civ–J–2 & 87–837–Civ–J12, 1989 WL 73212, at *6 (M.D.Fla. April 6, 1989) (additional factor to consider is whether the taxpayer expended personal funds to purchase and maintain the property).[20]

■ The IRS may properly levy against property of the delinquent taxpayer's nominee or alter ego. *See G.M. Leasing Corp. v. United States*, 429 U.S. 338, 351, 97 S.Ct. 619, 627–28, 50 L.Ed.2d 530 (1977) ("If petitioner was [delinquent taxpayer's] alter ego ... the Service could properly regard petitioner's assets as [the taxpayer's] property ... and the Service would be empowered, under § 6331, to levy upon assets held in petitioner's name in satisfaction of [the taxpayer's] income tax liability."); *Shades Ridge Holding Co. v. United States*, 888 F.2d 725, 728 (11th Cir.1989) ("Property of the nominee or alter ego of the taxpayer is subject to the collection of the taxpayer's tax liability."), *cert. denied*, 494 U.S. 1027, 110 S.Ct. 1472, 108 L.Ed.2d 609 (1990).

■ There is ample undisputed and conclusive evidence in the record that estab-

---

**20.** Whether state or federal law governs this issue is of little moment, since under either state or federal law the issue depends on who has "active" or "substantial" control over the property at issue. *See Valley Fin., Inc. v. United States*, 629 F.2d 162, 172 (D.C.Cir.1980), *cert. denied sub nom., Pacific Dev., Inc. v. United States*, 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1981); *Century Hotels v. United States*, 952 F.2d 107, 110 n. 4 (5th Cir.1992).

lishes that Nassau, Dominion and Colonial are Klimek's nominees. Specifically:

- It is undisputed that after Klimek was informed of the IRS's criminal investigation into his refusal to file income tax returns, the Klimeks purchased the Golf Club Drive property under the names of Nassau and Dominion.[21] *See* Magdalene Klimek Dep. at 33; Gov't's First Req. for Admission at Exh. 26. The Klimeks have resided in the Golf Club Drive property since its purchase.

- Furthermore, notwithstanding the undisputed fact that Klimek owed no money to or ever invested any money in Colonial, Klimek, as Dominion's president, had Dominion grant Colonial a mortgage in the Golf Club Drive property for no consideration in March of 1987. Gov't's First Req. for Admissions at ¶ 126. The Klimeks thereafter never made any mortgage payments to Colonial. *See* Magdalene Klimek Dep. at 48–49.[22]

- The Klimeks also had a bank account in Dominion's name at Mellon Bank, which they used to pay the utility bills on the Golf Club Drive property. *See id.* at 49–51, 80.

- Klimek is Nassau's, Dominion's and Colonial's president or agent, *see* Gov't's First Req. for Admissions at ¶¶ 121, 128–31. Mrs. Klimek is Colonial's Secretary agent, *see* Dep. of Magdalene Klimek at 24,[23] and an officer of Dominion, *see id.* at 33. Nassau's, Dominion's, and Colonial's address is the Golf Club Drive property. *See* Gov't's First Req. for Admissions at ¶ 8 & Exh. 20 and ¶¶ 9 & 15.

Given (1) Klimek's egregious and flagrant pattern of using Nassau, Dominion, and Colonial to shelter the Golf Club Drive property

from the Government's tax liens, (2) his comingling of personal affairs with those of Nassau, Dominion and Colonial, and (3) his complete dominance and control of Nassau, Dominion and Colonial, no reasonable finder of fact could negate the conclusion that these entities are merely Klimek's nominees and alter egos, which were established to shelter the Gulf Club property from Klimek's creditors, including the Government.

■ It is also pellucid that the mortgage granted by Dominion to Colonial is a sham and, without any doubt, lacks economic substance. It is therefore quite apparent that Klimek is in fact the equitable owner of the Golf Club Drive property. *See* 53 Pa. Cons. Stat. 10107(12) (defining "landowner" as the "legal or beneficial owner[ ] of land").

### 2. *Mrs. Klimek's Interest in the Golf Club Drive Property*

Mrs. Klimek claims in her answer to the Government's amended complaint that she has an interest in the Golf Club Drive property because the property "is the home of the Intervenor and Defendant Joseph Klimek and is owned by them as tenants by the entirety," Magdalene Klimek's Answer to Am. Compl. at Second Defense; *id.* at Fourth Defense, or as "tenants-in-common," *id.* at Fifth Defense. As a consequence, Mrs. Klimek asserts that the Golf Club Drive property "is not subject to foreclosure sale for taxes assessed against her husband." Magdalene Klimek Mem. of Law in Support of Summ.J.Mot. at 13.

■ In determining the nature of Mrs. Klimek's legal interest in the Golf Club Drive property, we must apply the law of the Commonwealth of Pennsylvania. *See National Bank of Commerce*, 472 U.S. at 722, 105 S.Ct. at 2925 (holding that the nature of the

---

**21.** The Klimeks used the proceeds of the sale of their Newtown property, which they had also transferred title to Dominion after learning of the IRS's investigation, to purchase the Golf Club Drive property. *See supra* at 1105.

**22.** As described above, after being informed that the IRS was criminally investigating him, Klimek used Nassau and Dominion to shelter real estate in Ocean City, New Jersey, and his previous

residence in Newtown, Pennsylvania, from his creditors, including the United States. *See supra* at 1105.

**23.** When Mrs. Klimek was asked "What do you understand your duties to be with respect to being secretary agent for Colonial Investment Company?", Mrs. Klimek responded, "No duties that I know of." Magdalene Klimek Dep. at 24–25.

taxpayer's legal interest in the subject property is determined by reference to state law); *Aquilino v. United States,* 363 U.S. 509, 513, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960) (same). "This follows from the fact that the federal statute 'creates no property rights but merely attaches consequences, federally defined, to rights created under state law.'" *National Bank of Commerce,* 472 U.S. at 722, 105 S.Ct. at 2925 (quoting *United States v. Bess,* 357 U.S. 51, 55, 78 S.Ct. 1054, 1057, 2 L.Ed.2d 1135 (1958)). The consequences that attach to state-created legal interest in property are, however, "a matter left to federal law." *Rodgers,* 461 U.S. at 683, 103 S.Ct. at 2137.

■ Mrs. Klimek contends that she and her husband own the Golf Club Drive property as tenants by the entirety, and, therefore, the Government may not foreclose on the property to satisfy income tax liens, which the Government admits are only against her husband. Mrs. Klimek, however, is mistaken in her characterization of her legal interest in the Golf Club Drive property. In order for the Klimeks to own the Golf Club Drive property as tenants by the entirety, they needed to have purchased title to the property in the names of Mr. and/or Mrs. Klimek. Instead, the Klimeks, by their own admissions, purchased the Golf Club Drive property in the name of "Nassau Life Insurance Company, Ltd., as Trustee, with the right to convey for the party of the second part. Dominion Holding Co." *See* Gov't's First Req. for Admissions at Exh. 26 (Deed); Magdalene Klimek Decl. at 9.

■ The law in Pennsylvania is quite clear that for a tenancy by the entirety to arise, the "four unities" of time, title, interest, possession and marriage must exist simultaneously. *See* Note, *The Power in a Husband and Wife Holding Property by the Entirety,* 59 Dick.L.Rev. 356, 356 (1955) (noting that the "four unities [are] essential to a holding in joint tenancy") (cited in *Napotnik v. Equibank & Parkvale Sav. Ass'n,* 679 F.2d 316, 319 n. 8 (3d Cir.1982)). As the Pennsyl-

vania Supreme Court explained in *Berhalter v. Berhalter,* 315 Pa. 225, 173 A. 172, 173 (Pa.1934),

> [A] deposit of money [,for example, in a bank account] in the names of husband and wife, or, of husband or wife, using both names, creates an estate by entireties. The incidents of such an estate are unity of interest, title, time, and possession, with the right of survivorship.

(citing cases). As a matter of hornbook law, the property in question must by held or purchased in the names of the husband and wife:

> A tenancy by the entirety is an estate which exists whenever property is held jointly by a husband and a wife *by virtue of title which they acquired after marriage.*

> \*    \*    \*    \*    \*    \*

> The incidents of an estate by the entirety are generally held to be the unities of interest, *title,* time and possession. As otherwise stated an estate by the entirety consists of the unities of time, *title,* interest, possession and marriage, all of which must coexist....

18 *Pennsylvania Law Encyclopedia* § 22 (1988) (emphasis added);[24] *see also In re Farris,* 194 B.R. 931, 941 n. 12 (Bankr. E.D.Pa.1996) ("The presumption that all property is matrimonial property coming into the marriage is not equivalent to the creation of entireties property, which requires that the property be acquired in joint names of husband and wife.") (quoting *Fratangelo v. Fratangelo,* 360 Pa.Super. 487, 498, 520 A.2d 1195, 1201 (Pa.Super.Ct.1987)); *Augello v. United States,* No. 1:92–CV–697, 1993 WL 330472, at \*3 (M.D. Pa. June 4, 1993) ("Under Pennsylvania law, a tenancy by the entirety is a special form of co-ownership that arises between husband and wife when property is placed in the name of both spouses."); *United States v. Cusumano,* No. 90–00091–01, 1991 WL 274835, at \*1 (E.D.Pa. Dec. 18, 1991) ("Property acquired in the names of

---

24. *Id.* at § 23 ("The creation of an estate by the entireties is presumed where property or an account is *placed in the names of a husband and wife,* even though the funds used to acquire the property or to establish the account were exclusively those of one spouse.") (emphasis added) (citing cases).

both husband and wife is presumed to be held by the entireties, and the placing of property in the names of both spouses, without more, creates an entirety estate."); *Raffaele v. Granger*, 100 F.Supp. 390, 391 (W.D.Pa.1951) (holding that bank accounts in husband's and wife's "joint names" were property in a tenancy by the entirety), *aff'd*, 196 F.2d 620 (3d Cir.1952).

██ The Klimeks' failure to place the Golf Club Drive property in either of their names when they purchased the property in 1985 or at any time thereafter negates, as a matter of settled Pennsylvania law, Mrs. Klimek's bald contention that the property is held in a tenancy by the entireties.

Furthermore, the Klimeks' affirmative decision to purchase title to the Golf Club Drive property in the names of Nassau and Dominion is clear evidence that they did *not* intend to create a tenancy by the entireties in the property. By Mrs. Klimek's own sworn account of the facts of this case, she and her husband:

● established Nassau, Dominion and Colonial;

● in 1984 transferred title to their Ocean City property (which was eventually sold in 1988) and to their Newtown property (the then-marital residence) to Nassau and Dominion;

● sold the Newtown property in July of 1985 and used the proceeds to purchase the Golf Club Drive property in August, 1986, under the names of Nassau and Dominion; and

● subsequently granted Colonial a sham mortgage on the Golf Club Drive property in March of 1987.

*See* Magdalene Klimek Decl. at ¶ 7, 9 & 10. The Klimeks signed the contract to purchase the Golf Club Drive property as officers for Dominion—Klimek signed the document as Dominion's "President Agent" and Mrs. Klimek signed as "Secretary Agent" for Dominion. *See id.* at Exh. D–1. Mrs. Klimek also acknowledges that when the Golf Club Drive property was purchased, she and her husband each owned forty-nine and a half units of Dominion and a resident of the British West resident held one unit of Dominion. *See* Magdalene Klimek's Mem. of Law at 9. Finally, Mrs. Klimek acknowledges that she used a bank account in the name of Dominion to pay the utility bills on the Golf Club Drive property.

Mrs. Klimek admitted in her deposition testimony that the purpose of placing title to their real property in the names of Nassau and Dominion was to shield the properties from the income tax collection efforts of the United States. Specifically, in response to the question "[Y]ou went along with him [her husband, who she knew was not filing income tax returns] and placed title of all your properties in the name of Nassau Life and Dominion Holding Company; isn't that correct?", Mrs. Klimek answered, "I signed—I signed the documents." Magdalene Klimek Dep. at 90–91; *id.* at 92 (responding to the question, "You were a party to these transfer by signing the documents, weren't you, Mrs. Klimek?", she admitted that, "I signed the documents, yes, they're my signatures."). When asked, "You knew darn well what was going on, didn't you, Mrs. Klimek?", in reference "to your homes that were all transferred into these entities," Mrs. Klimek responded, "I had an idea, but I did not pursue it or get into it. That was my way of escaping it. I don't know. I just did not want—." *Id.* at 92; *id.* at 93 (to the question, "[Y]ou went along with the transfers of the homes into the names of these entities; isn't that correct," Mrs. Klimek answered, "Yes, it is correct.").

██ In sum, the record is clear that at no time since August of 1985, when the Golf Club Drive property was purchased, did the Klimeks manifest any intent to create a tenancy by the entirety in the property.[25] *See High v. Balun*, 943 F.2d 323, 325 (3d Cir. 1991) ("[I]ntention is the cardinal and controlling element and if it is the intention of the parties to create an estate other than by

---

25. Mrs. Klimek cites *United States v. Jones*, 877 F.Supp. 907 (D.N.J.), *aff'd*, 74 F.3d 1228 (1995), in support of her claim that the Government cannot foreclose on the Golf Club Drive property.

However, *Jones* is inapposite here because in that case the title showed that the spouses held the property as tenants by the entirety.

entireties, such intention will be given effect.") (quoting *Brenner v. Sukenik*, 410 Pa. 324, 189 A.2d 246, 249 (1963)). Having benefited for over a decade from the sheltering of the Golf Club Drive property behind the corporate structures of Nassau, Dominion and Colonial, Mrs. Klimek, who is an officer of these entities, will not be heard at this late date to claim the protections afforded an innocent spouse under a legal theory of tenants by the entirety. *See Mazzara*, 530 F.Supp. at 1385–86.

While Mrs. Klimek may have some interest in the Golf Club Drive property (although clearly not an interest by the entireties), it is clear that § 7403 mandates, subject to limited exceptions,[26] the sale of not only her delinquent taxpayer husband's interest in the levied property, but of the whole property. *See Rodgers*, 461 U.S. at 693–94, 103 S.Ct. at 2142 ("[W]e must read the statute [§ 7403] to contemplate, not merely the sale of the delinquent taxpayer's own interest, but the sale of the entire property (as long as the United States has any 'claim or interest' in it), and the recognition of third-party interests through the mechanism of judicial valuation and distribution."); *id.* at 692 n. 18, 103 S.Ct. at 2142 n. 18 (holding that any property in which the taxpayer has "any right, title, or interest" is subject to foreclosure proceeding, including property in which others claim an interest, so long as all persons "having liens or claiming any interest in the property" are joined as parties to the suit) (quoting § 7403(a) & (b)); *see Mazzara*, 530 F.Supp. at 1385 ("The majority of circuit courts [which] have interpreted [Section 7403] ... have held that so long as the taxpayer has an interest in property, the entire property may be sold irrespective of any interest held in the same property by an individual not indebted to the government.").

Although we will order the sale of the Golf Club Drive property, we will also defer the disbursement of the proceeds of that sale until after a hearing, where we will determine, in accordance with her interest in the property, the amount of the sale proceeds, if any, to which Mrs. Klimek is entitled. *See Mazzara*, 530 F.Supp. at 1385. This is, however, a post-judgment matter that shall not delay the full relief the Government sought in its amended complaint.

An appropriate Order follows.

### ORDER AND JUDGMENT

AND NOW, this 24th day of January, 1997, upon consideration of:

(a) The United States of America's (i) motion for summary judgment and/or for sanctions against defendant Joseph E. Klimek ("Klimek"); (ii) motion for entry of default judgment against defendants Nassau Life Insurance Co., Ltd. ("Nassau"), Dominion Holding Co. ("Dominion"), and Colonial Investment Co. ("Colonial"); and (iii) opposition to defendant-intervenor Magdalene M. Klimek's ("Mrs. Klimek") cross-motion for summary judgment;

(b) Defendant Klimek's "notices" of December 3, 1996 and January 15, 1997;

(c) Defendant–Intervenor Mrs. Klimek's (i) answer to the Government's amended complaint; (ii) motion for summary judgment; and (iii) reply to the Government's opposition to he cross-motion for summary judgment, and in accordance with the accompanying Memorandum, it is hereby ORDERED that:

1. The United States of America's motion for summary judgment is GRANTED, in conformity with this Order;

2. The United States of America's motion for entry of default judgment against Nassau, Dominion and Colonial is GRANTED;

**26.** The Supreme Court has instructed that where a non-delinquent owner has a property interest that will be affected by the sale of the entire property, the Court may elect to exercise its equitable powers to prevent a forced sale of the entire property. *See Rodgers*, 461 U.S. at 709–13, 103 S.Ct. at 2151–52. Significantly, the Supreme Court has emphasized "that the limited discretion afforded by § 7403 should be exercised rigorously and sparingly, keeping in mind the Government's paramount interest in prompt and certain collection of delinquent taxes." *Id.* at 711, 103 S.Ct. at 2152. In view of Mrs. Klimek's extensive knowledge of and involvement in her husband's income tax delinquency and efforts to shelter assets from the IRS, we decline to exercise our equitable powers in this case. *See Mazzara*, 530 F.Supp. at 1386.

3. JUDGMENT IS ENTERED in favor of the United States of America and against defendant Joseph E. Klimek on Count I of the amended complaint in the amount of seven hundred fifty-nine thousand four hundred twenty-seven dollars and twenty-one cents, plus interest from November 30, 1996 to the date that the judgment is satisfied;

4. On Count II of the amended complaint, this Court DECLARES that:

(a) The federal tax liens, described in the amended complaint, are valid and subsisting tax liens upon all property and rights to property of defendant Klimek, as of the dates of the tax assessments made against him;

(b) Defendants Nassau and Dominion are (a) nominees of the taxpayer Klimek and defendant-intervenor Mrs. Klimek with respect to the real property located at 115 Golf Club Drive, Langhorne, Pennsylvania, 19047, and (b) have no valid interest therein; and

(c) The mortgage of defendant Colonial is a sham and is null and void;

5. Defendant-intervenor Mrs. Klimek's cross-motion for summary judgment is DENIED;

6. The United States of America is entitled to satisfy the tax liabilities of defendant Klimek by foreclosure of this judgment and its filed tax liens, as described in the amended complaint filed in this matter, against the subject real property located at 115 Golf Club Drive, Langhorne, Pennsylvania, 19047;

7. The United States Marshal for the Eastern District of Pennsylvania, or his representatives, is hereby authorized, pursuant to 28 U.S.C. §§ 2001 and 2002, to offer for sale at public auction, the real property situated at 115 Golf Club Drive, Langhorne, Pennsylvania, 19047;

8. The said real property shall be sold by public auction at a time and place situated in Bucks County, Pennsylvania, either on the premises themselves or at any other place in accordance with the provisions of 28 U.S.C. §§ 2001 and 2002, to be announced by the United states Marshal after first being advertised once each week for four consecutive weeks preceding the time fixed for such sale in a daily newspaper of general circulation in Bucks County, Pennsylvania, and by any other notice that the United States Marshal or his representatives in his discretion may deem appropriate. The notice of sale shall contain a description of the realty and shall contain the terms and conditions of sale in this judgment and decree;

9. Said real property shall be sold to the highest bidder subject to unpaid *ad valorem* property taxes with plaintiff having the right to withdraw the property from bidding at any time prior to the acceptance of a bid, if, in plaintiff's opinion, the bids are inadequate;

10. The sale shall be subject to building lines if established, all laws, ordinances, and governmental regulations (including building and zoning ordinances), affecting the premises, and easements and restrictions of record, if any;

11. Said real property shall be sold free and clear of the federal tax liens, as described in the accompanying Memorandum, and free of all claims, if any, of the parties to this action;

12. No bids (except as to the United States of America) shall be accepted unless the same is accompanied by a certified check or a cash deposit of at least ten percent of the amount of the bid. Before being permitted to bid at the sale, bidders shall display to the United States Marshal, or his representative, proof that they are able to comply with this requirement. No bids will be received from any person who had not presented proof that, if they are the successful bidder, they can make the deposit required by the Order;

13. The balance of the purchase price shall be paid to the United States Marshal within sixty days after the date the bid is accepted by a certified or cashier's check payable to the United States Marshal for the Eastern District of Pennsylvania. If the bidder fails to fulfill this requirement, the deposit shall be forfeited and shall be applied to cover the expense of the sale, with any amount remaining to be returned to the bidder, and the realty shall be again offered for sale under the terms and condition of the judgment and decree;

14. The sale of the realty shall be subject to confirmation by this Court. On confirmation of the sale, the United States Marshal shall execute and deliver a deed of judicial sale conveying the realty to the purchaser. On confirmation of the sale, all interests in, liens against, or claims to, the realty that are held or asserted by plaintiff or any of the defendants in this action are discharged and extinguished;

15. No later than twenty days after receipt of the balance of the purchase price, the United States Marshal shall file a report of sale with the Court, together with a proposed order of confirmation of sale and a proposed deed;

16. The Prothonotary of Bucks County, Pennsylvania, shall proceed to recording of the deed in favor of the purchaser(s);

17. Pending the sale of the above-described real property as ordered herein, and for the purposes of preserving the said property and placing it in a proper condition for sale, the United States Marshal is authorized to take possession and custody of the real property, to have free access to the premises and to take all action necessary to preserve said property between the date of this Order and date of confirmation of sale by this Court;

18. Until the realty is sold, Klimek and Mrs. Klimek may remain on the premises and shall take all reasonable steps necessary to preserve the realty (including all buildings, improvements, fixtures and appurtenances on the realty) in its current condition including, without limitation, maintaining fire and casualty insurance on the realty. Klimek and Mrs. Klimek shall not commit waste against the realty, nor shall they cause or permit anyone else to do so. They shall not do anything that tends to reduce the value or marketability of the realty, nor shall they cause or permit anyone else to do so. They shall take no action which may tend to deter or discourage potential bidders from participating in the public auction;

19. The distribution of the proceeds from the sale of the above-described real property shall abide a hearing to ascertain Mrs. Klimek's interest in the real property; and

20. The Clerk of the Court shall CLOSE this case statistically.