SHERMAN LEE JOHNSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Johnson v. Commissioner
Docket No. 5171-87
United States Tax Court
T.C. Memo 1989-591; 1989 Tax Ct. Memo LEXIS 592; 58 T.C.M. (CCH) 559; T.C.M. (RIA) 89591; October 30, 1989
*592 Held: Petitioner is not entitled to deductions for interest expense on loans which are not recognized for tax purposes. Held further: Petitioner is liable for additions to tax for fraud pursuant to section 6653(b)(1) and (2). Sherman L. Johnson, pro se. Frank D. Armstrong, Jr., for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: By statutory notice dated December 10, 1986, respondent determined a deficiency *593 and additions to tax against petitioner as follows: Additions to Tax
Section
Section
Section
Year
Deficiency
6653(b)(1) [1]
6653(b)(2)
6661
1984
$ 7,370.00
$ 3,685.00
50% of the
$ 1,815.50
interest due
on $ 7,262.99
Respondent conceded that the section 6661 addition to tax is not applicable. In issue after further concessions are: (1) petitioner's $ 19,620 mortgage loan interest expense deduction and $ 4,899.96 credit card interest expense deduction; (2) whether income taxation is unconstitutional, and (3) the additions to tax for underpayments attributable to fraud. At trial, we granted respondent's oral motion to consider a section 6653(a) addition to tax for negligent underpayment in the alternative to the section 6653(b) additions for fraud. However, because of our holding we do not reach this alternative. Initially, respondent determined the deficiency and additions in issue jointly against *594 petitioner and his former wife, Carol Ann Johnson. We granted a pretrial motion to sever Carol Johnson as a petitioner in the present case and entered a separate decision against her in December 1987. FINDINGS OF FACT Some of the facts in this case are stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated by this reference. At the time of filing his petition in this case, petitioner resided in Marshall, North Carolina. In mid-1983, petitioner resided outside of Mt. Carmel, Illinois. At that time, petitioner's wages were being garnished as a result of unpaid Federal income tax deficiencies which had previously been administratively assessed by the Internal Revenue Service. Petitioner contacted Traves Brownlee, the founder and leader of Americans for Constitutional Taxation (ACT), for advice on how to shelter his income from taxation. ACT promoted a scheme which advised taxpayers how to avoid the payment or collection of Federal income taxes through the purchase from ACT of "trust packages." The trust packages consisted of documents necessary to establish foreign contractual trust organizations (FCTO's) and information on how to *595 use FCTO's to avoid taxation. On October 13, 1983, Brownlee met with petitioner and others interested in ACT's product. The plan Brownlee presented consisted of purchasing a trust package and thereby establishing an FCTO in the Turks and Caicos Islands, British West Indies. The purchaser would appoint Nassau Life Insurance Company, Ltd. (Nassau Life), a Turks and Caicos entity, as trustee of the FCTO. Nassau Life would name the purchaser as an officer with authority to control the business activities of the purchaser's own FCTO. Then, Nassau Life would assist in arranging loans from the FCTO to the purchaser. The principal amounts of such loans would be arbitrary, with interest rates sufficient to generate alleged interest expense deductions which would greatly reduce or eliminate the purchaser's tax liabilities. [2]
At the conclusion of the October 13 meeting petitioner purchased a trust package from ACT. Petitioner authorized Brownlee, as agent for American Consulting Team (also ACT), to represent petitioner *596 in establishing Mid-Americas Investment Company (Mid-America), a Turks and Caicos FCTO. Petitioner directed Brownlee to set up Mid-America with Nassau Life as Trustee, petitioner as President, petitioner's ex-wife as Secretary, and petitioner's personal friend Rita Ivers as Treasurer. Mid-America's place of business and business address were petitioner's home. All organizational documents and minutes of Mid-America appointing officers were signed by Robert Chappell, president of Nassau Life, outside of petitioner's presence and backdated to October 13, 1983. At the time Mid-America was established, petitioner earned between $ 24,000 and $ 30,000 per year as a coal miner. Olympic Federal Savings and Loan held a first mortgage on petitioner's home with a remaining balance of approximately $ 23,000. Petitioner valued his home at between $ 45,000 and $ 50,000 and insured it for $ 50,500. However, on the document authorizing formation of Mid-America, dated October 13, petitioner and Brownlee listed additional encumbrances of: (1) a second mortgage on petitioner's home in the amount of $ 109,000 at 18-percent interest (Loan #1); and (2) a note for $ 35,000 at 14-percent interest, *597 secured by petitioner's miscellaneous personal property (Loan #2). Loans #1 and #2 did not, in fact, exist. Between October 13, and October 24, 1983, petitioner directed Nassau Life to draw up loan agreements between Mid-America and petitioner. Petitioner signed three "installment loan agreements" with Mid-America on October 24, 1983. Two of the agreements allegedly covered Loans #1 and #2, the debt petitioner had listed as existing 10 days earlier. Loan agreement #3 purported to evidence a $ 71,500 signature loan. The loan agreements stated that each monthly installment payment was to be comprised entirely of interest, with the principle amount payable on demand. The total amount of the three purported loans was $ 215,500. As collateral for the alleged Loan #1, petitioner executed a second mortgage on his home to Mid-America. Loan agreement #2 listed petitioner's personal car, truck, pool, and garden tractor, valued at $ 35,000, as security. There is no evidence in the record of delivery of the mortgage to Mid-America or that the mortgage was recorded. In addition, there is no evidence in the record that Mid-America obtained a security agreement or took possession of *598 any of the personal property collateral listed as securing the purported Loan #2. Mid-America conducted no business (outside of the purported loans to petitioner), had no independent source of income, and made no investments. No cancelled checks, receipts, or other documents exist substantiating that Mid-America otherwise had funds or assets available to loan. Further, Mid-America kept no records documenting payment of loan proceeds to petitioner or showing receipt of interest payments from petitioner. The only substantiation in the record that Mid-America received payments from petitioner are receipts signed by Mid-America's treasurer, petitioner's personal friend Rita Ivers, and an unsigned statement of interest payments on Nassau Life letterhead. Petitioner also filed a revised Form W-4 with his employer on October 24, 1983. The revised Form W-4 was effective for the year in issue. On the Form W-4, petitioner claimed 30 withholding allowances, 25 arising from anticipated deductions for interest expenses on indebtedness. On his 1984 return, petitioner claimed a $ 19,620 deduction for interest expense payments on Mid-America's alleged Loan #1. Petitioner did not claim *599 interest deductions on that year's return for interest payments on the purported Loans #2 and #3. Additionally, petitioner claimed a deduction for $ 4,899.96 in credit card interest payments for which no substantiation exists in the record. At the time of the transactions in issue, petitioner conducted his financial affairs solely on a cash basis in an effort to prevent the Internal Revenue Service from being able to seize funds for prior income tax deficiencies. ULTIMATE FINDINGS OF FACT Based on the entire record, we find that the purported Mid-America loans to petitioner and the receipts showing petitioner's interest payments on those loans to Mid-America were merely elaborate constructs on paper, conceived in an attempt to evade taxation. Mid-America had no funds available to loan to petitioner, and petitioner did not receive $ 215,500 in cash loan proceeds from Mid-America. Furthermore, petitioner made no payments to Mid-America which would justify interest deductions. OPINION The first matter for decision is whether petitioner is entitled to interest expense deductions. For the year in issue, section 163 allow a deduction for all interest expense paid on indebtedness. *600 Petitioner bears the burden of proving that he actually incurred and paid interest on indebtedness, entitling him to the deduction. Rule 142(a); . Respondent's determination of deficiency is presumed correct absent such proof. Rule 142(a). We found that Mid-America in fact made no loans to petitioner and that petitioner made no interest payments to Mid-America. At trial petitioner asserted the following astounding history of cash transactions: (1) that Mid-America received $ 215,500 in cash from Nassau Life; (2) Mid-America then loaned, in cash, $ 215,500 to petitioner; (3) that he kept the $ 215,500 cash in his living room, out of which he hand-delivered cash interest payments each month to Mid-America's treasurer, his personal friend Rita Ivers; and finally (4) Rita Ivers then mailed the cash received from petitioner each month to Nassau Life, in repayment of the alleged initial loan of cash to Mid-America. There is no record of a business purpose behind any of these purported transactions, nor of the transfer of any of these funds except for the receipts signed by Rita Ivers and the unsigned statement on Nassau *601 Life letterhead. Further, petitioner openly admitted at trial that the sole purpose of the loan arrangements between Mid-America and himself was to "shelter" income from taxation. In light of these facts, the entire transaction is not credible. In short, petitioner was not actually indebted to Mid-America and made no payments to Mid-America in 1984. Rather, petitioner appears to have engaged in an elaborate, but unsuccessful, tax-avoidance scheme. Petitioner is not entitled to a section 163 deduction for interest payments to Mid-America. Petitioner must also prove he is entitled to a $ 4,899.96 deduction for credit card or charge account interest expense. Petitioner presented no evidence substantiating payments on the claimed interest expense. Therefore, petitioner has not carried his burden of proving he paid the interest in issue and is not entitled to such a deduction in 1984. Alternatively, petitioner argues that income taxation is unconstitutional. Petitioner's tax-protestor argument regarding the taxation of income is time-worn and without merit. We have repeatedly held that income taxation is constitutional, and reaffirm that position here without comment. See, *602 e.g., ; and . The last issue is whether petitioner fraudulently claimed these deductions. Section 6653(b)(1) states that if any portion of petitioner's underpayment of tax is due to fraud, he is liable for an addition to tax of 50 percent of that underpayment. Pursuant to section 6653(b)(2), petitioner is also liable for 50 percent of the interest due on the portion of the underpayment attributable to fraud. Respondent has the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b). To so prove, respondent must show that the taxpayer intended to evade taxes known or believed to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. . The existence of fraud is a question of fact to be resolved upon consideration of the entire record. ; , affd. without published opinion ; *603 . Fraud may not be imputed or presumed. ; . However, fraud may be proven by circumstantial evidence, , or inferred by any conduct which does mislead or conceal. . The taxpayer's entire course of conduct may establish the requisite fraudulent intent. ; . Indicia of fraud may include: (1) the making of false and inconsistent statements to revenue agents, ; (2) the filing of false documents, , affd. ; and (3) inadequate records, implausible or inconsistent explanations of behavior, concealment of assets, and failure to cooperate with tax authorities, , *604 affg. a Memorandum Opinion of this Court. Respondent need not prove the precise amount resulting from fraud, but only that some part of an underpayment of the tax for the year in issue is attributable to fraud. ; , affg. a Memorandum Opinion of this Court. Petitioner's entire course of conduct shows that he intentionally established Mid-America as a scheme to evade taxes. We found that Mid-America' loans to petitioner were mere paper constructs. Petitioner openly admitted to this Court that the purpose of the Mid-America loans was to shelter income and prevent the Internal Revenue Service from collecting taxes. Moreover, petitioner conducted all his business on a cash basis in order to thwart collection of taxes and avoid lawful seizure of bank funds for tax deficiencies. Petitioner went to great lengths to evade taxation. We find that these facts alone constitute sufficient indicia that petitioner fraudulently claimed a deduction for interest expenses on the Mid-America loans. Petitioner, however, also revised his Form W-4 on *605 October 24, 1983, to claim he was entitled to 30 withholding allowances. The record indicates that petitioner revised his Form W-4 in anticipation of claiming interest deductions in 1984 for interest expenses he knew he would not pay, on loans he knew he would not receive. Petitioner therefore knowingly filed a false Form W-4. Filing a Form W-4 with false claims for withholding allowances is, in and of itself, an act of misrepresentation justifying additions to tax for fraudulent underpayment. , affg. a Memorandum Opinion of this Court. Respondent has proved by clear and convincing evidence that petitioner had the requisite fraudulent intent when claiming a deduction for Mid-America loan expenses and by filing a false Form W-4. Because petitioner's entire course of conduct shows an overriding concern with evading payment of income taxes, we also attribute petitioner's lack of substantiation for claimed credit card interest deductions to fraudulent misrepresentation. Petitioner is liable for the additions to tax under section 6653(b)(1) and (2). Decision will be entered under Rule 155. Footnotes
1. Unless otherwise noted, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Brownlee has since been convicted of tax fraud by the United States District Court for the District of Delaware for his participation in the ACT/Nassau Life scheme.↩