PARA TECHNOLOGIES TRUST, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Para Technologies Trust v. Commissioner
Docket Nos. 12089-91, 12242-91, 12445-91
United States Tax Court
T.C. Memo 1992-575; 1992 Tax Ct. Memo LEXIS 601; 64 T.C.M. (CCH) 922; September 28, 1992, Filed *601 Respondent's motions will be granted. For Petitioners: Joe Alfred Izen, Jr.
For Respondent: Paul B. Burns. COHEN
COHEN
MEMORANDUM OPINION COHEN, Judge: Each of these cases is before the Court for ruling on respondent's Motion to Compel Withdrawal of Petitioners' Counsel of Record for Conflict of Interest. The issue for decision is whether a conflict of interest exists that requires the disqualification of petitioners' counsel of record. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. Petitioners Para Technologies Trust (Para Tech) and Tom Anderson (Anderson) had their principal places of business in California at the time they filed their petitions. Petitioner Fred Ferber aka Frederick Ferber (Ferber) resided in California at the time he filed his petition. (Anderson resided in Oregon at the time of hearing on the pending motions in March 1992, but the record is silent with respect to his residence at the time he filed his petition.) Background
Nassau Life Insurance Company, Ltd. (Nassau Life), promoted the use of domestic *602 and foreign entities to shelter United States business and investment income from United States Federal income taxation. Nassau Life engaged in this activity through representatives known as "information officers" and through the dissemination of printed materials. From 1982 through 1988, Joe Alfred Izen, Jr. (Izen), was counsel to Nassau Life. In the course of that representation, among other services, he prepared and issued two opinion letters that related to the multiple-entity tax shelter promoted by Nassau Life. In a legal opinion letter dated September 26, 1983, Izen discussed the legal status of "contractual trust companies" that were being promoted by Nassau Life (the 1983 opinion letter). Ferber is a songwriter with a high school education. Anderson completed the eighth grade. At the time of hearing on the pending motions, Ferber was 36 years old and Anderson was 30 years old. Ferber and Anderson met in India in 1977 and became friends. In late 1984, Anderson began to engage in an electronics business, VideoLab, as a sole proprietor. Because of his limited education, Anderson wanted to adopt a structure for VideoLab that would minimize the amount of paperwork that *603 was necessary to carry on the business. He discussed his plans with Ferber, who was then employed as an information officer for Nassau Life. Ferber, relying at least partially on the 1983 opinion letter, advised Anderson, who also had access to the 1983 opinion letter, to structure his business as a trust such as those promoted by Nassau Life. In January 1985, Anderson formed Para Tech as a common-law business trust. From its creation and thereafter, Para Tech conducted the business in which VideoLab had previously been engaged. Ferber was the trustee of Para Tech. The beneficial owner of Para Tech was another trust, Atram Investment Group (Atram), formed under the laws of the Turks and Caicos Islands, British West Indies. Anderson was one of the beneficiaries of Atram. In a legal opinion letter prepared for Nassau Life dated June 20, 1985, Izen discussed the tax aspects of contractual trust companies (the 1985 opinion letter). Among other things, the letter concluded that the grantor trust provisions of the Internal Revenue Code did not apply to "contractual trust companies". Izen's letter failed to discuss decided cases contrary to the positions he was espousing. Anderson *604 and Ferber gained access to the 1985 opinion letter. Respondent determined deficiencies in petitioners' Federal income taxes for 1987 and 1988. Respondent determined that Para Tech was an association taxable as a corporation for Federal income tax purposes and disallowed its claimed distribution deductions. Respondent determined that Anderson and Ferber were each taxable on an amount equal to the taxable income of Para Tech. Respondent asserted three alternative theories in support of this determination. First, because Para Tech should be taxed as a corporation and because of their control over Para Tech and Atram, Anderson and Ferber were in constructive receipt of dividend income equal to the amounts transferred from Para Tech to Atram. Second, if Para Tech was a trust, it was a grantor trust owned by Anderson and Ferber, who were therefore taxable on Para Tech's income. Third, because both Para Tech and Atram were sham entities that should be disregarded for Federal income tax purposes, Anderson and Ferber are taxable on the income from Para Tech's business. Respondent also determined that all three petitioners are liable for additions to tax for fraud. Para Tech, Anderson, *605 and Ferber filed petitions for redetermination with this Court. Izen is counsel of record for petitioners in these cases. Nassau Life is bankrupt. All legal fees are being paid by Para Tech. No discovery and no settlement negotiations have taken place, and none of the cases has been set for trial. Respondent's counsel in these cases wrote letters to Izen dated September 19, 1991, and November 15, 1991, questioning Izen regarding possible conflicts of interest in his representation of petitioners. Izen did not respond to these letters. Respondent, therefore, moved the Court to compel withdrawal of Izen as petitioners' counsel. Discussion
Petitioners contend, based on Appeal of Infotechnology, Inc., 582 A.2d 215 (Del. Super. 1990), that respondent lacks standing to make this motion because a nonclient litigant does not have the power to enforce a technical violation of the Model Rules of Professional Conduct (Model Rules). These cases, however, are distinguishable from Appeal of Infotechnology, Inc., supra, in which the court held that it had "become apparent that * * * [the opposing party] was seeking to use disqualification as *606 a litigation tactic." Id. at 221. The Court is generally reluctant to disqualify counsel of a taxpayer's choice on motion of the adversary. See Alexander v. Superior Court, 685 P.2d 1309, 1317 (Ariz. 1984). In these cases, however, respondent promptly moved for disqualification prior to conducting discovery or engaging in settlement negotiations and before these cases were set for trial. See Duffey v. Commissioner, 91 T.C. 81, 84 (1988). Rule 201(a) provides that "Practitioners before the Court shall carry on their practice in accordance with the letter and spirit of the Model Rules". This Court, therefore, has the power to compel withdrawal of petitioners' counsel if such representation would violate the Model Rules. Specifically, Rule 24(f) provides: If any counsel of record (1) was involved in planning or promoting a transaction or operating an entity that is connected to any issue in a case, [or] (2) represents more than one person with differing interests with respect to any issue in a case, * * * then such counsel must either secure the informed consent of the client * * *; withdraw *607 from the case; or take whatever other steps are necessary to obviate a conflict of interest or other violation of the ABA Model Rules of Professional Conduct, and particularly [Rule] 1.7 * * * Rule 24(f), which became effective July 1, 1990, emphasizes the provisions of the Model Rules to which practitioners before this Court were already subject. Rule 24(f) was added "to insure that the bar of this Court disclose or rectify any conflict of interest." Rules of Practice and Procedure of the United States Tax Court, 93 T.C. 821, 858 Note. Model Rule 1.7(b) provides: A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless: (1) the lawyer reasonably believes the representation will not be adversely affected; and (2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved. Petitioners contend that Izen's representation *608 of them does not violate Model Rule 1.7(b) because no potential conflict of interest exists among petitioners. Petitioners contend that each petitioner is contesting the deficiency and will argue that Para Tech should be recognized as a trust and that Para Tech's Federal income tax returns for 1987 and 1988 were correct. Respondent contends that Izen's representation of each petitioner may be materially limited by his responsibilities to the other petitioners and by his own interests. Respondent states: There are positions which can be advanced on behalf of each Petitioner which, if established, would enable that Petitioner to avoid liability for all or part of the deficiencies and additions to tax determined against that Petitioner, but which cannot be established without irreparably damaging some other Petitioner's case. As set forth above, respondent determined that Anderson and Ferber were each taxable on an amount equal to the taxable income of Para Tech. One of respondent's alternative theories is that Para Tech is a grantor trust. Generally, the grantor trust rules apply to a person, such as Anderson, who created the trust. See secs. 671 through 678. Anderson formed *609 the trust and transferred his business to it and is a beneficiary of the trust. Ferber, although serving as a trustee, is less likely to be a grantor. Ferber, and, hypothetically, Para Tech, would avoid taxation if respondent successfully established that the income was taxable to Anderson as the grantor. Further, respondent has determined that each petitioner is liable for the additions to tax for fraud. In support of that determination, respondent's answer alleges that books and records made available to respondent during the examination of petitioners' returns were false and fraudulent, that petitioners "individually and in concert, refused to cooperate with Respondent's agents and attempted to obstruct Respondent's examination by various means", and that each petitioner understated or failed to report taxable income and tax due from them. In this regard, Anderson and Ferber can each argue that the other was responsible for maintaining the books and records of Para Tech and for preparing its tax returns and that each relied on the other. Each may also claim that he relied on Izen's opinion letters. In addition, Ferber, as trustee of Para Tech, is putatively making decisions *610 for Para Tech, including using its funds to pay for litigation of these cases, while Anderson, not Ferber, has a beneficial interest in Para Tech. Although it is too early in this litigation to anticipate all of the arguments that will be made, and the foregoing possibilities may not be the positions that petitioners should or will adopt at trial, there is a serious possibility that petitioners' positions may become adverse to each other. See Figueroa-Olmo v. Westinghouse Elec. Corp., 616 F.Supp. 1445, 1451-1454 (D. Puerto Rico 1985); Shadid v. Jackson, 521 F.Supp. 87, 89 (E.D. Tex. 1981). Izen's personal interests in this case may also conflict with the interests of petitioners. Anderson and Ferber relied, at least partially, on opinion letters that Izen had written. Therefore, Izen has an interest in vindicating the positions he took in the opinion letters in order to maintain his professional reputation and to protect himself from any potential future liability to petitioners. See, e.g., Eisenberg v. Gagnon, 766 F.2d 770, 779-780 (3d Cir. 1985) (holding that investors in a tax shelter *611 could recover from an attorney who had misrepresented facts relating to the tax shelter). He would therefore be less likely to advise petitioners disinterestedly with regard to such matters as accepting a settlement offer. See Model Rules Rule 1.7(a) and 1.7 comment (1983) (stating that, "If the probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client detached advice."). See also Adams v. Commissioner, 85 T.C. 359, 372-373 (1985). Izen's failure to advise petitioners of the potential adverse defenses or affirmative claims available to them would constitute a breach of his duty of loyalty to them. Figueroa-Olmo v. Westinghouse Elec. Corp., supra at 1453-1454; Eriks v. Denver, 824 P.2d 1207, 1211-1212 (Wash. 1992) (citing Model Rules Rule 1.7 comment (1984) and holding that as a matter of law there was a conflict of interest between promoters of and investors in a tax shelter). Finally, Izen is potentially a witness with respect to matters set forth in his tax opinion, and testimony on that subject *612 could appropriately be obtained without violation of the attorney-client privilege. See In re Grand Jury Proceedings, 727 F.2d 1352 (4th Cir. 1984); and United States v. Jones, 696 F.2d 1069 (4th Cir. 1982). Izen and petitioners contend that petitioners have been informed of and waive Izen's conflict of interest. We are not persuaded, however, that the apparent consent of petitioners is informed and voluntary. They testified that they had no intention to sue either Nassau Life or Izen and that they understood that, if a dispute arose between Anderson and Ferber, Izen would have to withdraw. Neither Izen nor petitioners identified any disclosures of the potential adverse positions that might lead to a dispute between Anderson and Ferber. In this regard, Izen's questions and Anderson's responses at the hearing included the following: Q As far as Fred [Ferber] is concerned, was there a discussion of any kind with Joe Alfred Izen, Jr., about what would happen if Fred and yourself pointed the fingers at each other? A Discussion with you or with Fred? Q Either one, or both? A We had -- we had simply discussed the legal *613 possibility that existed but did not see that as a reality or as even a plausible option for us to pursue. Q Why wasn't it plausible? A We both really have the same interests at heart, I believe, and I don't see what I would get out of, you know, trying to sue Fred. He has as much money as I do, which is almost nothing, so this question is going to come up later anyway, so -- Q Well, again, though, at the start of the lawsuit and with your discussions with your Attorney, Joe Alfred Izen, Jr., did you -- were you and Fred Ferber more or less in agreement on the facts of how Para Technologies operated and who got what as far an any benefits or income; that's what I'm trying to ask? A Well, yes, of course. I mean, Fred was Trustee and obviously, I need to be in agreement with what he's directing and have been, through the existence of the Trust. Q Right. Was there any expression made that if a conflict between Fred and yourself were to arise based on changing representation of facts, that Joe Alfred Izen, Jr., might have to withdraw? A I'm trying to remember the timing of this, of the various issues we had discussed. We had discussed that as a possibility, but I don't recall *614 -- I don't recall having the impression at that time that that was very likely to happen. Q Do you anticipate in this case any inconsistent defenses by you or Fred Ferber? A No. We are not persuaded that Izen made a full and fair disclosure or that petitioners understood the inherent potential conflicts between them. The backgrounds of the individuals suggest a lack of sophistication in assessing matters such as these, and they relied solely on the advice of Izen in deciding to waive the conflicts of interest. Compare Adams v. Commissioner, 85 T.C. at 372-374 (holding that taxpayers could not be relieved of a settlement agreement based on their attorney's conflict of interest because taxpayers were sophisticated, knew all of the relevant facts, and had been advised by independent counsel before employing the author of an opinion letter). It appears to us that the waiver is not based on informed consent but on the cost of employing independent and separate counsel and having such counsel become familiar with the underlying facts of the cases. Izen admitted during the hearing on respondent's motion that he had not secured written consents or waivers *615 from petitioners and that he had not contacted Nassau Life or other beneficiaries of the Para Tech trust. Under these circumstances, we conclude that it is "more important that unethical conduct be prevented than * * * [that petitioners] have an unfettered right to counsel of * * * [their] choice." Kevlik v. Goldstein, 724 F.2d 844, 849 (1st Cir. 1984). The potential for unfairness to petitioners and damage to the integrity of the judicial process is too serious to permit Izen's representation of petitioners to continue, even in the face of an apparent waiver. Figueroa-Olmo v. Westinghouse Elec. Corp., supra at 1451; Shadid v. Jackson, supra at 90; and Model Rules Rule 1.7 comment (1983) (stating that, "when a disinterested lawyer would conclude that the client should not agree to representation under the circumstances, the lawyer involved cannot * * * provide representation on the basis of the client's consent.") Therefore, Izen must be disqualified from representing petitioners in these cases. Respondent's motions will be granted. Footnotes
1. Cases of the following petitioners are consolidated herewith: Tom Anderson, docket No. 12242-91; and Fred Ferber aka Frederick Ferber, docket No. 12445-91.↩