The UNITED STATES of
America, Plaintiff,

v.

Glen D. BELL, Jeanette Bell, Glen and
Jeanette Bell as Trustees of the Glen D.
Bell Family Trust, Glen D. Bell and
Jeanette Bell as Trustees of Racine
Trust, Glen D. Bell as Trustee of Stark
Management Company, Stockton Finan-
cial Corp., Defendants.

No. CV–F–95–5346 OWW/SMS.

United States District Court,
E.D. California.

Sept. 29, 1998.

1192

G. Patrick Jennings, U.S. Department of Justice, Tax Division, Washington, DC, for Plaintiff.

Charles A. Wieland, Madera, CA, Alan Richard Coon, Bray Geiger Rudquist and Nuss, Stockton, CA, for Defendants.

Glen D. Bell, Modesto, CA, pro se.

Jeanette Bell, Modesto, CA, pro se.

**MEMORANDUM OPINION AND ORDER RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DEFENDANT GLEN D. BELL AND DEFENDANT JEANETTE BELL'S MOTION TO RECONSIDER PURSUANT TO FED.R.CIV.PROC. 60(b), CO-DEFENDANT STOCKTON FINANCIAL CORP. REQUEST FOR ATTORNEY'S FEES,**

WANGER, District Judge.

The matters before the court are: 1) Plaintiff's motion for summary judgment for foreclosure of federal tax liens against real property allegedly owned by Glen D. Bell and Jeanette Bell, husband and wife, ("Defendants Bell") 2) Defendants Bell Fed.R.Civ.P. 60(b) motion to reconsider based on a claim of new evidence and fraud 3) Co-defendant mortgage holder Stockton Financial Corporation's request for payment of attorney's fees by Defendants Bell.

## I. BACKGROUND

On April 29, 1997, this court reduced to judgement tax assessments against Glen D. Bell in the amount of $2,680,283.30 plus interest and against Jeanette Bell in the amount of $1,022,865.20 plus interest from March 15, 1993, the plaintiff United States now seeks to foreclose its tax lines against real property claimed to be beneficially owned by defendants.

In this action, the government alleges a personal residence and surrounding 30–acre ranch were held by Stark Management Company as the "nominee and alter ego" for Defendants Bell, when the federal tax liens arose.

The government seeks to enforce its liens against the property and distribute its proceeds to senior mortgagee Stockton Financial Corporation with remainder to the United States.

Stockton Financial Corporation has filed a notice of non-opposition to the government's motion for summary judgment and has requested Defendants Bell pay its attorney's fees.

On September 14, 1998, the Bells, proceeding without counsel, filed an "EMERGENCY EX PARTE MOTION" with the "Article III circuit court of appeals" requesting a "STAY" of this proceeding, a "NOTICE OF GROSS JUDICIAL MISCONDUCT", and a "WRIT OF ERROR" in response to the September 1, 1998 order denying assorted demands regarding the court's jurisdiction.[1] The Bells have also responded to the government's summary judgment motion by claiming the existence of newly discovered evidence under Fed.

---

1. The contested September 1, 1998 Order held that jurisdiction of the federal courts existed pursuant to U.S. Const. Art. 3, § 2; 28 U.S.C. §§ 1 et seq.; §§ 1251, et seq., *ORDER RE: MISCEL-* *LANEOUS DEMANDS,* U.S. District Court for the Eastern District of California, September 1, 1998.

R.Civ.P. 60(b) and by contesting the validity of federal taxation generally, the concept of national citizenship, and the jurisdiction of the federal court in this case.[2]

## II. LEGAL STANDARD

### A. Summary Judgment

■ Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c); *see Maffei v. Northern Ins. Co. of New York,* 12 F.3d 892, 899 (9th Cir.1993). A genuine issue of fact exists when the non-moving party produces evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party. *Triton Energy Corp. v. Square D Co.,* 68 F.3d 1216, 1221 (9th Cir.1995); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252–56, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The non-moving party cannot simply rest on its allegations without any significant probative evidence tending to support the complaint. *U.A. Local 343 v. Nor–Cal Plumbing, Inc.,* 48 F.3d 1465, 1471 (9th Cir.), *cert. denied,* 516 U.S. 912, 116 S.Ct. 297, 133 L.Ed.2d 203 (1995).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ The more implausible the claim or defense asserted by the opposing party, the more persuasive its evidence must be to avoid summary judgment. *United States ex rel. Anderson v. Northern Telecom, Inc.,* 52 F.3d 810, 815 (9th Cir.), *cert. denied,* 516 U.S. 1043, 116 S.Ct. 700, 133 L.Ed.2d 657 (1996). Nevertheless, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in its favor." *Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. 2505. A court's role on summary judgment, however, is not to weigh the evidence, *i.e.,* issue resolution, but rather to find genuine factual issues. *Abdul–Jabbar v. General Motors Corp.,* 85 F.3d 407, 410 (9th Cir.1996).

■ Evidence submitted in support of or in opposition to a motion for summary judgment must be admissible under the standard articulated in 56(e). *See Keenan v. Hall,* 83 F.3d 1083, 1090 n. 1 (9th Cir.1996); *Anheuser–Busch, Inc. v. Natural Beverage Distribs.,* 69 F.3d 337, 345 n. 4 (9th Cir.1995). Properly authenticated documents, including discovery documents, although such documents are not admissible in that form at trial, can be used in a motion for summary judgment if appropriately authenticated by affidavit or declaration. *United States v. One Parcel of Real Property,* 904 F.2d 487, 491–492 (9th Cir.1990). Supporting and opposing affidavits must be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Fed. R.Civ.P. 56(e); *Conner v. Sakai,* 15 F.3d 1463, 1470 (9th Cir.1993), *rev'd* on other grounds sub nom. *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Any doubts regarding admissibility are resolved in favor of the party opposing summary judgment. *Western Land Corp. v. Crawford–Merz Co.,* 62 F.R.D. 550 (D.Minn. 1973).

## III. DISCUSSION

### A. Plaintiff's Motion for Summary Judgment

Success on summary judgment in the instant case requires the government to dem-

---

**2.** Among these papers is a "NOTICE AND AFFIDAVIT OF CHARACTER", which is yet another document signed by Mr. Bell continuing threats against the court and purporting to require a response from the judge under penalty of "admission", which is not by law. This further attempt at intimidation of the court requires no response.

onstrate there is no genuine issue of fact regarding the contention Glen and Jeanette Bell had control over a personal residence at 3549 Kiernan Road in the vicinity of Modesto, California and the surrounding 30–acres when the federal tax liens relating to their tax debts arose.

■ The government seeks to establish this control by arguing Stark Management Company held the property as a "nominee and alter ego" for the Bells. "In seeking to satisfy legitimate tax debts, the government may levy on property held by a corporation or other business entity, when the corporation or other business entity is determined to be the alter ego or nominee of the taxpayer." *Valley Fin., Inc. v. United States,* 629 F.2d 162, 171 (D.C.Cir.1980); "Property held in the name of an entity which is the alter ego of a taxpayer may be levied on to satisfy the tax liabilities of the taxpayer." *F.P.P. Enters. v. United States,* 830 F.2d 114, 118 (8th Cir.1987). "Property of the ... alter ego of a taxpayer is subject to the collection of the taxpayer's tax liability." *Shades Ridge Holding Co., Inc. v. United States,* 888 F.2d 725, 728–29 (11th Cir.1989) citing *G.M. Leasing Corp. v. United States,* 429 U.S. 338, 350–51, 97 S.Ct. 619, 626, 50 L.Ed.2d 530 (1977).

■ Nominee status is determined by the degree to which a party exercises control over an entity and its assets. *Ridge* at 729 (11th Cir.1989); *LiButti v. United States,* 107 F.3d 110, 119 (2nd Cir.1997).

"Courts have considered the following factors to be relevant in determining whether a business entity is the nominee of an individual:

(a) No consideration or inadequate consideration paid by the nominee;

(b) Property placed in the name of the nominee in anticipation of a suit or occurrence of liabilities while the transferor continues to exercise control over the property;

(c) Close relationship between transferor and the nominee;

(d) Failure to record conveyance;

(e) Retention of possession by the transferor; and

(f) Continued enjoyment by the transferor of benefits of the transferred property."

*Towe Antique Ford Foundation v. I.R.S.,* 791 F.Supp. 1450, 1454 (D.Mont.1992) *citing United States v. Miller Bros. Constr. Co.,* 505 F.2d 1031 (10th Cir.1974) (legal title holder was merely the nominee of the taxpayer); *United States v. Williams,* 581 F.Supp. 756, 759 (N.D.Ga.1982) (legal title holder was nominee of debtor); *United States v. Code Prod. Corp.,* 216 F.Supp. 281 (E.D.Pa.1963) (title holder was nominee of corporate taxpayer); *Tato Int'l Corp. v. United States,* 64 A.F.T.R.2d (P–H) para. 89–5124 (S.D.Fla. 1989) (United States' levy against assets of corporation was proper since corporation was taxpayer's nominee).

Based on four affidavits and findings of fact from a prior Bankruptcy Court proceeding [3] incorporated by reference, the government presented the following, inter alia, as "undisputed facts":

1. On May 1, 1984, defendant Glen D. Bell and defendant Jeanette Bell obtained legal title to the Kiernan Road property from Paul and Rose Warda for a purchase price of $350,000. (Reece Decl. Exh. A; Kathryn Lewis Deposition, Ex. G).

2. The residence was constructed on the property following the Bells' purchase. (Lewis Deposition, Ex. G).

3. On August 15, 1984, the Bells granted a deed of trust interest in Parcel A of the real property to Stockton Financial Corporation as trustee for Stockton Federal Savings and Loan Association, to secure $310,000. (Decl. of Morris Knight, Exhibit A: Deed of Trust, Pg. 1).

4. On June 12, 1985, the Bells granted an interest in the property to "Glen D. Bell and Jeanette Bell as trustees of the Glen D. Bell Family Trust". The deed states, "There is no consideration for this transfer." (Susan Pankow Deposition, Ex. A)

---

**3.** *Glen D. Bell v. United States,* Adversary Proceeding No. 91–9071.

5. On September 25, 1985, Defendants Bell recorded a Deed of Trust with Assignment of Rents against the subject property. Defendants Bell granted the trust deed for the purpose of securing a $300,000 debt. The beneficiary was an apparent creation of Mr. Bell, known as the "International Bank of the South Pacific". (Reese Decl. p. 4, no. 10).

6. Mr. Bell characterized the International Bank of the South Pacific encumbrance as a "paper mortgage" (Reese Decl. p. 4, no. 10).

7. On December 2, 1985, the Bells transferred the real property to "Glen D. Bell and Jeanette Bell, as Trustees of the THE GLEN D. BELL FAMILY TRUST, dated May 9, 1985." No documentary transfer tax was paid. (Pankow Deposition, Ex. C)

8. On May 27, 1986, the Bells as trustees of THE GLEN D. BELL FAMILY TRUST, dated May 9, 1985 conveyed the property to the "Racine Trust" without consideration. (Pankow Deposition, Ex. D)

9. On December 9, 1987, the "Racine Trust", using a deed signed by the Bells, transferred an interest in the property to Stark Management Company, without consideration. Stark Management's officers were Bell family members. (Pankow Deposition, Ex. E)

10. Stark Management Company is an entity formed by the Nassau Life Insurance Company of the Turks and Caicos Islands. (Reese Decl., p. 8, no. 26)

11. The Nassau Life Insurance Company has been characterized as a "tax shelter" organization for taxpayers found to have fraudulent intent to evade tax collection. *See United States v. Klimek,* 952 F.Supp. 1100 (E.D.Pa.1997); *Pack v. United States,* 77 A.F.T.R.2d 96–972, 96–976, 1996 WL 149345 (E.D.Cal.1996); *also Boyce v. Comr.* 60 T.C.M. 1549(CCH), 1990 WL 212865 (1990); *Johnson v. Comr.,* 58 T.C.M. 559(CCH), 1989 WL 127961 (1989); *Jensen v. United States,* 60 A.F.T.R.2d 87–5033, 1987 WL 16937 (E.D.Cal.1987); *Para Technologies Trust v. Comr.,* T.C.Memo 1992–575, 64 T.C.M. 922(CCH), 1992 WL 237247 (1992).

12. Glen Bell has a long history of using nominee and alter ego devices to avoid creditors and debt liability. (Consolidated Findings of Fact and Conclusions of Law, *McGranahan v. Bell,* Adv. Pro. No. 90–9200, *In Re Glen D. Bell,* Bankr.Case No. 990–00968, E.D. Cal., p. 61, no. 97).

13. Glen Bell has at least six trusts established with the Nassau Life Insurance Company and/or its successor, "the Provo Group" (est.1985/6): Stark Management, Racine Company, Lancaster Company, Growth Management, Walnut Acres, and Universal Enterprises. (Patrick Jennings Declaration, Exh. A, p. 31, Reese Decl. p. 8, no. 27, Consolidated Findings of Fact and Conclusions of Law, *McGranahan v. Bell,* Adv. Pro. No. 90–9200, *In Re Glen D. Bell,* Bankr.Case No. 990–00968, E.D.Cal., p. 62, nos. 101, 102)

14. Mr. Bell controlled the workings of the various trusts set up for him through Nassau Life Insurance Company or the Provo Group. (*Consolidated Findings,* p. 33, no. 187)

15. A search of records at the Stanislaus County Tax Collector and Modesto City Hall revealed no record of county or city business licenses having been issued to Racine Trust, Stark Management Company, or the International Bank of the South Pacific. Similar inspections of fictitious name statements at the County Clerk's office also yielded negative results. with the exception of a business entity named "Racine Enterprises". (Reese Decl. p. 5, no. 15)

16. Mr. Bell became a member of the Provo Group in May 1987. (*Consolidated Findings,* p. 31, no 176)

17. Sometime thereafter, Sue Pankow, an office assistant employed in Glen D. Bell's medical practice for 14 years, was made an officer of Stark Management Company. (Pankow Deposition 15:7–13, 23:16–21)

18. Sue Pankow's duties as trustee of Stark Management Company solely consisted of transferring funds from Glen D. Bell's medical practice to make mortgage payments, pay utilities, telephone, electric, and swimming pool maintenance bills for the subject real property. Her trustee responsibilities did not include making investment decisions or managing trust assets. (Pankow Depo. 13:7–15, 14:15–20, 63:1–16).

19. Sue Pankow made payments for Stark Management Company as directed by Glen D. Bell. Her salary was paid by Glen D. Bell Inc. (Pankow Depo. 25:19–21; 24:4–9)

20. As of 1989, Defendants Bell continued to claim a Homeowner's Exemption on the subject real property. Stanislaus County officials do not allow the exemption to be claimed unless they are satisfied the residence is occupied by its owners. (Randy Reece Declaration, p. 6, no. 16)

21. Sue Pankow's sister, Carmen Parolini, took over Sue Pankow's trustee duties between 1990 and 1992. Parolini continued to pay Stark Management Company's bills for Glen D. Bell. Bell authorized every check that Parolini issued. (Carmen Parolini Depo. 4:2–11)

22. On March 25, 1992, during his prior bankruptcy action and with the benefit of counsel, Glen D. Bell stipulated the subject real property belonged "to the debtor [Glen D. Bell] and his wife and is part of their bankruptcy estate". (*Glen D. Bell v. United States,* Adversary Proceeding No. 91–9071, Stipulation Re: Turnover of Property to the Bankruptcy Estate, p. 3, ¶ 3).

23. On March 25, 1992, the Bankruptcy Court approved the Turnover Stipulation declaring the subject real property as belonging to the Bells. (*Glen D. Bell v. United States,* Adversary Proceeding No. 91–9071, Stipulation Re: Turnover of Property to the Bankruptcy Estate)

 Although pro se litigants are held to less stringent standards than those applicable to licensed attorneys, *Meade v. Grubbs,* 841 F.2d 1512, 1526 (10th Cir.1988), they must nevertheless " 'follow the same rules of procedure that govern other litigants.' " *Oklahoma Federated Gold and Numismatics, Inc. v. Blodgett,* 24 F.3d 136, 139 (10th Cir.1994) (quoting *Green v. Dorrell,* 969 F.2d 915, 917 (10th Cir.1992)). Even liberally construed, the Bells' response does not contest any specific undisputed facts made by the government.[4]

 If the moving party meets its initial burden showing "the absence of a material and triable issue of fact," "the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense." *Intel Corp. v. Hartford Acc. & Indem. Co.,* 952 F.2d 1551, 1558 (9th Cir.1991) (quoting *Richards v. Neilsen Freight Lines,* 810 F.2d 898, 902 (9th Cir.1987)). The necessary significant and probative evidence "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Industrial Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

 The Bells have not provided specific evidence that dispute any of the 23 undisputed facts listed above, or that create any disputed issues of material fact regarding the nominee status of the subject property as presented by the government. The Bells' "Opposition to United States' Motion for Summary Judgment" alleges as conclusions of law, "constructive fraud", "extortion", and

4. "[A] pro se party (who is not incarcerated) is held to the same standard in responding to a motion for summary judgment as a represented party." *Jacobsen v. Filler,* 790 F.2d 1362, 1364–66 (9th Cir.1986). Given case citations coetaneous to the Articles of Confederation, references to Jay's Treaty of 1794 (8 Stat. 116) inter alia, Roman Civil Law, Defendants Bell demonstrate their capability to conform to the requirements of Fed.R.Civ.P. 56.

"unjust enrichment pursued under color of law" (Def.Affidavit, p. 27, no. 3, Def.Brief, p. 2). The opposition contains no legally admissible facts, but rather asserts a number of legally conclusory contentions framed as arguments. The affidavits and deposition testimony of Sue Pankow and Carmen Parolini together with stipulations made by the Bells in prior judicial proceedings establish as undisputed the 23 facts showing the requisite degree of control to establish nominee status, and tax liability, with regard to the subject real property.

The Bells "must come forward with sufficient evidence demonstrating to the Court that there are genuine issues of mate-

rial fact to be decided at trial." *Rand v. Rowland*, 154 F.3d 952 (9th Cir.1998). The existence of a genuine issue of material fact may be demonstrated through the use of affidavits, depositions, answers to interrogatories, and admissions. The defendant's sole affidavit[5] does not address the government's statement of facts but instead offers a constellation of challenges to federal taxation generally, the court's authority, and the concept of national citizenship.[6] These are contentions and conclusions of law, not facts. As other courts have long held, these theories are neither correct[7] nor persuasive.[8]

"The constitutionality of the taxing system is not a gray area, but one delineated in ...

5. Glen D. Bell, "Notice and Affidavit of Character", August 20, 1998.

6. *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir.1991) (affidavits or other material provided by a pro se litigant must create a genuine issue for trial that could lead a trier of fact to find in the non-movant's favor).

7. *See United States v. Sloan*, 939 F.2d 499, 501 (7th Cir.1991) (rejecting assertions that an individual was "not a taxpayer" and "not a person" subject to the tax laws as "simply wrong"), cert. denied, 502 U.S. 1060, 112 S.Ct. 940, 117 L.Ed.2d 110 (1992); *Lonsdale v. United States*, 919 F.2d 1440, 1448 (10th Cir.1990) (rejecting argument that citizen of a state is "not a person" under the Internal Revenue Code as "completely lacking in legal merit and patently frivolous"); *United States v. Dawes*, 874 F.2d 746, 751 (10th Cir.1989) (rejecting individual's assertion of being a "sovereign" exempt from taxes); *United States v. Romero*, 640 F.2d 1014, 1016 (9th Cir. 1981) (rejecting assertion that individual was "not a person" subject to the tax laws as "fatuous" as well as "obviously incorrect"); see also *United States v. Melton*, No. 94–5535, 1996 WL 271468 (4th Cir.1996) (rejecting defendants' "excise tax" and not persons liable for federal income tax arguments noting, "the debate over whether the income tax is an excise tax or a direct tax is irrelevant to the obligation of citizens to pay taxes and file returns."); *United States v. Hooper*, No. 95–35565, 1995 WL 792039, at n. 1 (9th Cir.1995) (following Romero); *United States v. Cooper*, No. 95–5078, 1995 WL 559304, (6th Cir. Sept.20, 1995) (rejecting as "patently frivolous" defendant's assertion that the district court lacked jurisdiction over him because he was a state citizen, not a United States citizen); *Benson v. United States*, Nos. 94–4182, 95–4061, 1995 WL 674615, (10th Cir.1995) (following Lonsdale), cert. denied, —— U.S. ——, 117 S.Ct. 143, 136 L.Ed.2d 90 (1996); *United States v. Keys*, No. 92–3729, 1993 WL 101442 (6th Cir.1993) (rejecting the "not a taxpayer"

argument); *United States v. Kitsos*, No. 91–2763, 1992 WL 164290, (7th Cir.1992) (following Sloan); *LaRue v. United States*, 959 F.Supp. 959 (C.D.Ill.1997) (rejecting and imposing sanctions against plaintiff relating to plaintiffs' claims that they were a "nonresident alien" not subject to tax and that the State of Illinois was not a state as defined in the Internal Revenue Code); *United States v. Rhodes*, 921 F.Supp. 261, 264 (M.D.Pa. 1996) (rejecting not a person subject to taxation argument citing Sloan); accord, *Cheek v. United States*, 498 U.S. 192, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991) (In addressing the "willfulness" of failure to file tax returns, the Supreme Court described as "surely frivolous" the arguments that individuals "were not taxpayers within the meaning of the tax laws, that wages are not income, that the Sixteenth Amendment does not authorize the imposition of an income tax on individuals, and that the Sixteenth Amendment is unenforceable."). "Likewise meritless are respondents' assertions that they are not residents of the United States, although residents of the State of Michigan, and therefore not subject to federal taxation." *See United States v. Mundt*, 29 F.3d 233, 237 (6th Cir.1994) (rejecting argument as frivolous).

8. "All individuals, natural or unnatural, must pay federal income tax on their wages," regardless of whether they requested, obtained or exercised any privilege from the federal government. Lovell, 755 F.2d at 519; *United States v. Studley*, 783 F.2d 934, 937 (Studley's argument that "she is not a 'taxpayer' because she is an absolute, freeborn and natural individual ... is frivolous. An individual is a 'person' under the Internal Revenue Code."). Moreover, the tax code imposes a "direct nonapportioned [income] tax upon United States citizens throughout the nation, not just in federal enclaves," such as postal offices and Indian reservations. *United States v. Collins*, 920 F.2d 619, 629 (10th Cir.1990), cert. denied, 500 U.S. 920, 111 S.Ct. 2022, 114 L.Ed.2d 108 (1991) (citing *Brushaber v. Union*

black and white[,] ... a belief in the unconstitutionality of a law, no matter how tenaciously held, does not excuse its violation if, indeed, the law is upheld as constitutional." *U.S. v. Condo,* 741 F.2d 238 (9th Cir.1983) *United States v. Ness,* 652 F.2d 890, 893 (9th Cir.1981), cert. denied, 454 U.S. 1126, 102 S.Ct. 976, 71 L.Ed.2d 113 (1981); *United States v. Kelley,* 539 F.2d 1199, 1204 (9th Cir.1976), cert. denied, 429 U.S. 963, 97 S.Ct. 393, 50 L.Ed.2d 332 (1976).

### B. The Bells' Motion to Reconsider

Defendants Glen D. Bell and Jeanette Bell base their Fed.R.Civ.Proc. 60(b) motion to reconsider the order made by this court on September 1, 1998 on an allegation that the declarations of Randy Reese and G. Patrick Jennings are "fraudulent" indicia of an "executive cabal". (Def. Brief, p. 20 and p. 20, item (f))

Federal Rule of Civil Procedure 60(b) governs the reconsideration of final orders of the district court. The Rule permits a district court to relieve a party from an order or judgment on grounds of: "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party ... or (6) any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b). The motion for reconsideration must be made within a reasonable time, in any event "not more than one year after the judgment, order, or proceeding was entered or taken." *Id.*

Motions to reconsider are committed to the discretion of the trial court. *Combs v. Nick Garin Trucking,* 825 F.2d 437, 441 (D.C.Cir.1987); *Rodgers v. Watt,* 722 F.2d 456, 460 (9th Cir.1983) (en banc). To succeed, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision. *See, e.g., Kern–Tulare Water Dist. v. City of Bakersfield,* 634 F.Supp. 656, 665 (E.D.Cal.1986), *aff'd* in part and *rev'd* in part on other grounds, 828 F.2d 514 (9th Cir.1987), *cert. denied,* 486 U.S. 1015, 108 S.Ct. 1752, 100 L.Ed.2d 214 (1988). The Ninth Circuit has stated that "[c]lause 60(b)(6) is residual and 'must be read as being exclusive of the preceding clauses.'" *Lafarge Conseils et Etudes, S.A. v. Kaiser Cement,* 791 F.2d 1334, 1338 (9th Cir.1986), quoting *Corex Corp. v. United States,* 638 F.2d 119 (9th Cir.1981). Accordingly, "the clause is reserved for 'extraordinary circumstances.'" *Id.*

Defendants Bell have alleged fraud. Their legal conclusion that the Assistant United States Attorney and revenue agent assigned to this case are part of an "executive cabal" is insufficient to create a disputed issue of material fact. No facts are offered in support of these argumentative legal conclusions. Beyond their spurious theory of extra-jurisdictional action [9], the

*Pacific R.R.,* 240 U.S. 1, 12–19, 36 S.Ct. 236, 239–42, 60 L.Ed. 493 (1916)).

9. In addition to jurisdictional challenges, the Bells contend the filing of this action without an administrative paper trail from the Secretary of the Treasury to IRS employees and enforcement powers to United States Attorney Jennings is in some form extra-statutory. This is incorrect. "To [the] list of rejected tax protester arguments we now add as equally meritless the additional [argument] ... that (1) the Commissioner of Internal Revenue and employees of the Internal Revenue Service have no power or authority to administer the Internal Revenue laws, including power to issue summons, liens and levies, because of invalid or nonexistent delegations of authority," *Lonsdale v. United States* 919 F.2d 1440, 1448 (10th Cir.1990). "Acts done by a public officer 'which presuppose the existence of other acts to make them legally operative, are presumptive proofs of the latter.'" *Stearns v. United States,* 291 U.S. 54, 54 S.Ct. 325, 78 L.Ed. 647 (1934).

Defendants Bell also argue the Secretary of Treasury's authority is limited by a definition of the "United States" that encompasses only territories and possessions such as the "Commonwealth of Puerto Rico, the Virgin Islands, Guam, and American Samoa" (Def.Brief, p. 6, 11) but not the contiguous 48 states, Hawaii and Alaska. Defendants Bell reach this outcome "by interpreting the term 'include' [as used in the tax code] as a term of limitation rather than of definition", *United States v. Ward,* 833 F.2d 1538, 1539 (11th Cir.1987) "This claim ... has no semblance of merit." *In re Becraft (United States v. Nelson),* 885 F.2d 547, 549 n. 2 (9th.Cir.1989) citing *Ward.*

Bells have not introduced any probative evidence to justify reconsideration based on their allegation. As such, defendants' 60(b) motion fails.

### C. Stockton Financial Corporation's request for Attorney's fees

Stockton Financial Corporation is the successor in interest to Guaranty Federal Bank, doing business as Stockton Savings Bank, the beneficial owner of the Deed of Trust on the subject property of which Glen D. Bell and Jeanette Bell are the named and signed borrowers.

Stockton Financial Corporation retained counsel to defend its interest in the subject property and is seeking reimbursement for those expenditures. Local Rule 293 governs the award of attorney fees in this District.

The motion for fees must show the following:

(1) The moving party was the prevailing party;

(2) The moving party is eligible for fees, and the basis of that eligibility;

(3) The amount of the fees sought;

(4) Information pertaining to the criteria considered in fixing the award; and

(5) Other matters required by statute.

■■■ The basic fee, or "lodestar," is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Gates v. Deukmejian,* 987 F.2d 1392, 1397 (9th Cir.1992). The prevailing party has the burden of documenting the hours expended and submitting evidence in support of the hours worked. *Id.* at 1397–98. "It is an abuse of discretion for the court to award fees for hours that are not properly documented." *Stewart v. Gates,* 987 F.2d 1450, 1453 (9th Cir.1993). Hours that are "excessive, redundant, or otherwise unnecessary" are to be excluded from the fee request. *Id.* at 1452. The reasonable hourly rate typically is based on "prevailing market rate[s] in the community" for similar work. *Jordan v. Multnomah County,* 815 F.2d 1258, 1262 (9th Cir.1987). Exhibit C from the Declaration of Morris Knight (Vice President, Stockton Financial Corporation) lists

attorney expenses of $5,527.32 based on an average hourly rate of $150 to the Stockton, California law firm Bray, Geiger, Rudquist, & Nuss.

According to Mr. Knight's declaration as drafted by Stockton Financial Corporation's attorneys, reasonable "[f]ees, late charges, and and [sic] costs are recoverable under paragraphs 5 and 7 of the Deed of Trust *and* paragraph 7 of the Promissory Note," if any action materially affecting the property were to arise, (Decl. of Morris Knight, p. 2, ln. 5, emphasis not added). In fact, only Item 7, ln. 6; Item 18, ln. 12 of the August 15, 1984 Deed of Trust and Item 7(E), ln. 3 of the August 9, 1984 promissory note include signed promises by the Bells to repay reasonable attorney's fees.

■■■ As the successor in interest, Stockton Financial Corporation has been required to be a named party in the lien and lien foreclosure proceeding concerning the Bells' tax liability. As deed of trust holder, Stockton Financial Corporation has necessarily incurred attorney's fees in this case. It is entitled to reasonable attorney's fees with respect to this litigation for protecting the priority of its lien under its loan agreement with the Bells. The government has acknowledged the seniority of Stockton Financial Corporation's lien on the subject property, *See* 26 U.S.C. § 6323(e).

■■■ The hourly rate of $150.00 per hour charged by the attorney for Stockton Financial Corporation is reasonable and well within prevailing hourly rates for attorneys before the court in the field of debt collection and real estate security transactions. The time expended in representing Stockton Financial Corporations's interest in this case, 36 hours over 3 years of litigation, was reasonably required to protect its senior lien interest, as were the legal services set forth in Exhibit C of the Knight Declaration. "A strong presumption exists that the lodestar (reasonable number of hours times reasonable hourly rate) represents a reasonable fee," *G. & G. Fire Sprinklers, Inc. v. Bradshaw,* 136 F.3d 587, 98 C.D.O.S. 7080, 7085 (9th Cir.1998). Further findings beyond the lodestar are not required in this case. Stockton Financial

Corporation is entitled to recover $5527.32 in attorney's fees and costs in this case.

### CONCLUSION

"Nominee" status is a sufficient basis to attach tax liability to the subject property. Plaintiff has proved the existence of a nominee relationship between Defendants Bell and Stark Management Company. Defendants have provided no evidence that disputes plaintiff's specific statement of undisputed facts. The evidence establishes defendants retained all benefits and control of the subject real property at the time the federal liens arose and since that time. The Bells admitted in Bankruptcy Court they are the beneficial owners of the real property. Without significant probative evidence to the contrary, as a matter of law, there is no genuine issue as to any material fact. Plaintiff's motion for summary judgment is GRANTED. Defendant's motion to reconsider is DENIED. The request for reasonable attorney's fees in the amount of $5,977.32 payable to the Stockton Financial Corporation by Defendants Bell is GRANTED. Proceeds of the foreclosure of the property shall be distributed first to satisfy the claims of Stockton Financial Corporation, the United States, with the balance if any to Defendants.

**SO ORDERED.**